Leonard A. Radlauer, New Orleans, La., for plaintiff-appellant.

W.J. Larzelere, Jr., Kristi A. Post, C. Theodore Alpaugh, III, Metairie, La., for defendant-appellee.

Roger GASTON, Plaintiff–Appellant,

v.

FLOWERS TRANSPORTATION, (Cro–Marine Division, A Division of Chromalloy American Corporation), Defendant–Appellee.

No. 88–3025.

United States Court of Appeals, Fifth Circuit.

March 3, 1989.

Before GEE, THORNBERRY and POLITZ, Circuit Judges.

GEE, Circuit Judge:

### Background

Roger Gaston appeals the dismissal of his action under the Jones Act against Flowers Transportation for emotional injury, allegedly sustained when he observed the death of his half-brother. We affirm.

### Facts

In February 1986 Roger Gaston and his half-brother, James Easom, were employed as deckhands on a barge being pushed by the M/V Mariner. Gaston had recently helped James get the job and was responsible for supervising him. In the course of the voyage, the Mariner allegedly struck the barge violently, throwing down both

Gaston and his half-brother. Gaston fell to the deck; but James slipped between the barge and the vessel and was crushed to death, despite Gaston's efforts to pull him to safety.

The plaintiff himself suffered only trivial physical injury—a bruised elbow—but was allegedly diagnosed as having suffered post-traumatic stress disorder as a result of viewing James's death. In addition to his Jones Act claim for witnessing the death, Gaston seeks recovery for alleged unseaworthiness under General Maritime Law.

*Analysis*

### A. The Jones Act

Roger Gaston seeks recovery under the Jones Act, 46 U.S.C.App. § 688, for a purely emotional injury. The trial court, for purposes of ruling on the defendant's motion for summary judgment, adopted the plaintiff's allegations of fact. 675 F.Supp. 1036. Thus, for the sake of the motion, the court presumed the Mariner's captain negligent. Notwithstanding, the judge determined that Gaston should not recover because he sought damages resulting, not from his own injuries, but from the injuries of another person—in fine, bystander liability.[1]

As the trial court noted, this is a case of first impression. No case in this circuit has yet addressed the issue whether an individual may recover under the Jones Act for wholly emotional injuries. Nor have we discovered any case in any circuit dealing with bystander liability under the Jones Act. The Federal Employers' Liability Act, 45 U.S.C. § 51, et seq. (FELA), which served as the basis for the Jones Act, is similarly devoid of bystander precedent. The standard of liability is the same under both acts, and the case law of the FELA therefore sheds light on the Jones Act. *Ferguson v. Moore–McCormick Lines,* 352 U.S. 521, 523, 77 S.Ct. 457, 458, 1 L.Ed.2d 511 (1957); *Springborn v. American Commercial Barge Lines, Inc.,* 767 F.2d 89, 98

(5th Cir.1985). Indeed, the Jones Act in its entirety consists of only two sentences granting seamen the same remedies as railway employees. *See* 46 U.S.C.App. § 688; *Kopczynski v. The Jacqueline,* 742 F.2d 555, 558 (9th Cir.1984); *Nygaard v. Peter Pan Seafoods, Inc.,* 701 F.2d 77, 79 (9th Cir.1983).

The Act states in relevant part:

> Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in all such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply....

46 U.S.C.App. § 688.

### B. Legislative History

Whether even a liberal interpretation of the Jones Act requires extending recovery to those who suffer purely emotional injury is doubtful. The legislative history of the FELA, a statutory and not a common-law system of recovery, indicates clearly the several purposes of the original bill, the Senate Report listing four principal ones:

> First. It amends the law as to the liability of employers for injuries sustained by one employee through the negligence of a coemployee. This doctrine of fellow-servants is very old and possibly had sound reason to support it before the occupations of men became complex and diversified....
>
> Second. This measure proposes to set aside the earlier rule of law which presumes that a workman have notice of and assume the risks incident to all dangers of his employment and defects in the machinery with which he works.
>
> .    .    .    .    .
>
> Third. It is the purpose of this measure to modify the law of contributory negligence....
>
> Fourth. The proposed measure contains a section affecting contracts made by a

---

1. By this term, as used in the FELA/Jones Act context, we mean an attempt by a crew member to recover damages for witnessing the death or injury of another crew member, without significant injury or fear of injury to himself.

workman limiting or relieving the employer's liability for negligence.

S.Rep. No. 460, 60th Cong., 1st Session 1–3 (1908). The Report continues by stating that the purpose of the legislation is not to "add burdens to the business enterprise of the country, but rather to promote the welfare of both employer and employee, by adjusting the losses and injuries inseparable from industry and commerce to ... those who ... ought to share the burden." *Id.* at 4. The House Report cites similar goals. H.R.Rep. No. 1386, 60th Cong., 1st Session 1–3 (1908). *See also* S.Rep. No. 661, 76th Cong., 1st Session (1939).

## C. *The Open Texture of the Law: The Supreme Court*

The most recent statement from the Supreme Court regarding recovery for purely emotional injuries under the FELA, and therefore the Jones Act, is to be found in *Atchison, Topeka and Santa Fe Railway Co. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). In *Buell*, the Court declined to decide whether damages were recoverable for purely emotional injuries under the FELA because the record was not fully developed on the alleged tort of the employer and the claimed resulting injury to the respondent. *Id.* at 567, 107 S.Ct. at 1417. The court did, however, offer the following observation:

> In short, the question whether one can recover for emotional injury may not be susceptible to an all-inclusive "yes" or "no" answer. As in other areas of law, broad pronouncements in this area may have to bow to the precise application of developing legal principles to the particular facts at hand.

*Id.* at 570, 107 S.Ct. at 1418. This statement has been viewed as an open invitation "to parse the FELA in light of the specific facts" of a case. *Netto v. Amtrak*, 863 F.2d 1210, 1213 (5th Cir.1989). Indeed, a liberal interpretation has traditionally been ascribed to the legislation; and the common law has served as a guide to interpreting the statute. *See Buell*, 480 U.S. at 568, 107 S.Ct. at 1417.

## D. *The Law in the Circuits*

### 1. Pre-*Buell*

In the underlying case that first presented the issue of FELA recovery for purely emotional injury to the Supreme Court, the Ninth Circuit had held that the Act allowed recovery for "an injury attributable to employer negligence ... regardless of its characterization as mental or physical." *Buell v. Atchison, Topeka and Santa Fe Railway Co.*, 771 F.2d 1320, 1324 (9th Cir. 1985). The plaintiff in *Buell* had alleged that "harassment, threats, and intimidation he suffered while employed at the Railroad" caused his emotional breakdown. *Id.* at 1321.

The Ninth Circuit's holding in *Buell* is echoed, although not without reservations, by then Judge Kennedy in *Taylor v. Burlington Northern Railroad Co.*, 787 F.2d 1309, 1313 (9th Cir.1986). The plaintiff in *Taylor*, who was borderline mentally retarded, alleged that harassment by a railroad foreman caused him to suffer paranoid schizophrenia. *Id.* at 1312–13. On these facts the court held the employer liable for the plaintiff's emotional injury. *Id.* at 1313. *See also Lewy v. Southern Pacific Transportation Co.*, 799 F.2d 1281, 1288 (9th Cir.1986).

### 2. Post-*Buell*

In the wake of *Buell*, several circuits have considered attempts to recover for purely emotional injuries. The first of these cases was *Adkins v. Seaboard System Railroad*, 821 F.2d 340 (6th Cir.1987). In *Adkins*, the plaintiff sought recovery for emotional injury because employees "deliberately and premeditately [sic] conspired to have the plaintiff terminated without any regard to the possible consequences of their actions...." *Id.* at 341. The Sixth Circuit noted that the Supreme Court had left open the possibility of recovery for emotional injury under the FELA but held that recovery would not lie for intentional infliction of emotional distress. *Id.* at 342. The court also noted that the plaintiff's complaint was for an intentional rather than a negligent tort. Since *Buell* addressed only negligent acts and the harm

was purely emotional, the Sixth Circuit seemed especially reluctant to allow recovery. *Id.* at 341–42. The court hints, however, that it might not have allowed recovery even for a negligent tort that produced a merely emotional injury. *Id.* at 342.

Next, the First Circuit refused to make *Moody v. Maine Central Railroad Co.*, 823 F.2d 693 (1st Cir.1987), "a pioneer case exploring the frontier possibly opened up by *Buell.*" *Id.* at 694. The plaintiff had alleged that employer harassment had caused his angina attacks, but failed to establish the necessary element of causation. *Id.* at 693–94. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court observed that its earlier holding refusing recovery for purely emotional injury might now be in doubt. *Id.* at 694. *See Bullard v. Central Vermont Railway, Inc.,* 565 F.2d 193, 197 (1st Cir.1977). Even so, it went on to opine that *Buell* might have left "the door to recovery for wholly emotional injury somewhat ajar but not by any means wide open." *Moody, supra* at 694. Whether the First Circuit would allow recovery in a properly pleaded case is doubtful.

The most recent post-*Buell* case is *Hammond v. Terminal Railroad Association of St. Louis,* 848 F.2d 95 (7th Cir.1988). In an opinion by Judge Posner, the Seventh Circuit flatly rejected the plaintiff's claim for recovery for emotional injury without physical contact. *Id.* at 96. Citing its earlier decision in *Lancaster v. Norfolk & Western Railway,* 773 F.2d 807, the court affirmed its holding that "the FELA does not create a cause of action for tortious harm brought about by acts that lack any physical contact or threat of physical contact." *Id.* *See Lancaster, supra* at 813.

The views of the circuits regarding liability for mere emotional injury under the FELA/Jones Act therefore diverge: the Sixth and Seventh expressly reject it; the First is dubious about it; but the Ninth Circuit holds that a purely emotional injury gives rise to a cognizable claim.

### E. *Plaintiff's Argument*

Mr. Gaston maintains that our Circuit dispensed with the impact requirement in

*Hagerty v. L & L Marine Services, Inc.,* 788 F.2d 315, 318 (5th Cir.1986):

> With or without physical injury or impact, a plaintiff is entitled to recover damages for serious mental distress arising from fear of developing cancer where his fear is reasonable and causally related to the defendant's negligence. The circumstances surrounding the fear-inducing occurrence may themselves supply sufficient indicia of genuineness.

While the *Hagerty* court did observe that a Jones Act recovery was possible without physical impact, that statement was necessarily dictum; for Mr. Hagerty *did* suffer impact, having been drenched with cancer-causing chemicals. More to our purpose, Mr. Hagerty's recovery was one for his own expenses and for his own fear of contracting cancer—one based upon an event directly affecting *him.* In today's case, Mr. Gaston seeks recovery for a bystander injury that resulted from witnessing the death of *another.* As the trial court noted, no evidence was presented tending to show that Gaston was ever concerned for his own safety; all of his alleged emotional injuries stem from viewing the death of his near relative. The one Circuit that has allowed such a recovery did so when the plaintiff was *himself* the target of the tortious act. *See Taylor, supra* at 1313. None has yet countenanced a pure bystander recovery under the FELA/Jones Act; and, for reasons to be stated, we doubt that any will.

Construing these federal workers' compensation acts to cover bystanders' injuries would represent a major departure from existing jurisprudence, as well as a vast extension of potential employer exposure to damages. On the extension of liability side, not one but two significant innovations would be required: permitting a recovery for purely emotional injuries, which only the Ninth Circuit has clearly countenanced in the FELA/Jones Act context, and permitting such a recovery, not for such injuries resulting from physical trauma to the plaintiff, or even from his fear of such trauma to himself, but for emotional

injury stemming from witnessing a bad sight—the violent death of another person, in this instance a near relative.[2]

In taking this latter course we would stand alone; no decision to which we are cited or which our research has discovered has done so, and the reason why none has seems clear. For the consequences of creating a compensable bystander's cause of action under these federal worker's compensation acts for seamen and railroaders would be random and wayward ones, multiplying damages incalculably on the basis of factors which are entirely incidental to the operation of the train or vessel and which bear little or no relationship to the safety of that venture—factors such as how many crew members happen to be standing around to observe an incident, whether their vision is obscured by darkness or weather, how close they are to the occurrence, and the like. Because they are irrelevant to that operation, visiting exponential damages on an employer on the basis of such factors is not only random and wayward, but serves in no way to advance the major subsidiary purpose of affording such remedies as those of the FELA/Jones Act to trainmen and seamen: to hold out incentives to their employers to reduce dangers and to operate safely. More, extending such potentially ruinous liability to employers involves evaluating economic trade-offs which we (or any other court) are poorly equipped even to envision, let alone to weigh against each other.[3]

Finally, there seems to be something incongruous in undertaking such an extension of liability to seamen and railroaders. These have knowingly and voluntarily chosen callings which, while today perhaps not fairly termed dangerous, yet do involve braving certain hazards and are traditionally not well suited to the squeamish or fainthearted. To undertake to enlarge such persons in damages in proportion to the delicacy of their emotional reactions seems a curious policy. For these reasons, therefore, we conclude that such a giant step as Mr. Gaston proposes that we take is, while perhaps an appropriate one for consideration by the legislature, not a proper one for a court to take.

The plaintiff further argues that since he was in the zone of danger he should be allowed to recover. The United States Supreme Court has stated that circuit courts may consult state common law for guidance in resolving the issue of recovery for emotional injury. *See Buell, supra* 480 U.S. at 568, 107 S.Ct. at 1417. Consideration of state law is thus appropriate. Under Louisiana law there is usually no recovery for mental distress caused by injury to another person. *See, e.g., LeConte v. Pan American World Airways, Inc.*, 736 F.2d 1019, 1020–21 (5th Cir.1984) (common-law action by sheriff's deputies who volunteered for duty at site of air disaster for mental anguish arising from what they saw there); *Blackwell v. Oser*, 436 So.2d 1293 (La.Ct.App.), *writ denied*, 442 So.2d 453 (La.1983); *Black v. Carrollton Railroad Company*, 10 La.Ann. 33 (1855). Louisiana law does, however, allow recovery for those within the zone of danger; but Gaston made no showing that he even thought himself to be in danger. Neither his deposition nor his answers to interrogatories indicate that he was concerned that *he* might be harmed when James was caught between the barges.

Finally, complaint is made that the trial court refused to consider whether or not the defendant's ship was unseaworthy. As

---

**2.** In concluding that monetary compensation for such an experience is not available under the Jones Act we do not in any sense minimize its tragic quality.

**3.** A few of these, however, come readily to mind: Given their random nature, are the risks of compensating every crew member who happens to see another hurt, or killed, or (perhaps) *see him come close to being hurt or killed*, effectively insurable? Would the cost of recognizing such liability put any, or some, or (perhaps) all railroads and shipping companies out of business? How many jobs will be lost? Given the present state of psychiatric knowledge, how common is the incidence of actual, emotional injury derived from witnessing a single occasion on which another is killed or injured? Who, if anyone, knows? Are the prospects for feigned injuries and bogus claims unacceptably high?

we held, however, in *Sosa v. M/V Lago Izabel,* 736 F.2d 1028 (5th Cir.1984), the ancient right to recover for unseaworthiness is limited to recovery of "loss of earnings, past and prospective, . . . medical expenses . . . and also an additional sum on account of his physical injuries and for pain and suffering". *Id.* at 1034. *See also Bartholomew v. Universal Tankships, Inc.,* 279 F.2d 911, 916 (2d Cir.1960). Hence, since damages for wholly emotional injuries are not recoverable by bystanders under the unseaworthiness remedy, there was no need for the trial court to make such a determination.

### Conclusion

We do not hold today that no recovery can be had under the FELA/Jones Act for a purely emotional injury resulting from actions directed against the plaintiff or an occurrence that happened to him. That fact situation is not presented today. But whatever merit allowing recovery for purely emotional injury may have or may lack, we see none in allowing mere crewmen-bystanders to recover for witnessing the misfortune of another. Of the Circuit courts which have considered the issue, only one has allowed recovery for emotional harm; and in that case the plaintiff was the *object* of the tortious act—one of deliberate "harrassment, threats and intimidation." *See Taylor, supra* at 1312–13, 1321. Mr. Gaston cites no case, nor have we found one, supporting recovery under either of these Acts for purely emotional injury from a tortious act or occurrence directed at a third person. As a result, and for the reasons stated, we join the First Circuit in rejecting the Supreme Court's "invitation" to go where no court has gone before.

The decision of the trial court is

AFFIRMED.