Charles E. MORGAN and Joyce E. Morgan, Plaintiffs,

v.

UNITED AIR LINES, INC., Defendant.

Richard L. GUTSHALL and Barbara Ann Gutshall, Plaintiffs,

v.

UNITED AIR LINES, INC., Defendant.

Civ. Nos. 90–B–209, 90–B–314.

United States District Court, D. Colorado.

Nov. 6, 1990.

Bruce A. Lampert, Denver, Colo., for plaintiffs.

John W. Grund, Denver, Colo., for defendant.

## ORDER

BABCOCK, District Judge.

This case is before me on Defendant, United Air Lines, Inc.'s objections to and Motion for Reconsideration of Magistrate's Recommendation. Having reviewed the magistrate's exhaustive and detailed analysis in support of his recommendations concerning defendant's Motion in Limine, I conclude as follows:

1. The magistrate recommends that I deny defendant's motion in limine which substantively attacks plaintiffs' right to seek purely emotional distress damages under the Warsaw Convention. Because this dispositive aspect of defendant's motion in limine is necessarily treated as a motion to dismiss for failure to state a claim, I review the magistrate's recommendation *de novo*. On *de novo* review I conclude that the magistrate's recommendation is correct and should be adopted by the court. *Floyd v. Eastern Airlines, Inc.*, 872 F.2d 1462 (11th Cir.1989), *cert. granted sub nom.*, —— U.S. ——, 110 S.Ct. 2585, 110 L.Ed.2d 266 (1990).

2. My review of the magistrate's remaining recommendations regarding the evidentiary matters addressed in defendant's motion in limine leads me to conclude that they are not clearly erroneous or contrary to governing law. Fed.R.Civ.P. 72(a); Local Rule 602(C). Accordingly, I adopt and approve the magistrate's recommendations on these matters; provided however, that insofar as the magistrate deems relevant the events immediately following evacuation of the plane, I do not decide whether and to what extent events

thereafter may be relevant to plaintiff's damage claims.

IT IS THEREFORE ORDERED that the magistrate's recommendations are adopted and approved by the court.

## RECOMMENDATION OF UNITED STATES MAGISTRATE

DONALD E. ABRAM, United States Magistrate.

### FACTS

This lawsuit arose from an airline incident on February 24, 1989, while Plaintiffs were en route from Honolulu, Hawaii to Auckland, New Zealand, United Air Lines Flight 811 experienced sudden decompression at 23,000 ft. Decompression occurred after the right forward lower lobe cargo door and part of the fuselage separated from the airplane. Five double-seat units in the lower business section were lost during the decompression. The plane returned to Honolulu approximately 20 minutes after the decompression and Passengers and crew were evacuated. Plaintiffs in their complaint allege mental distress due to their experience while on board flight 811.

Defendants have filed several motions in limine. This court has received briefs from both parties. After doing a detailed analysis of the briefs and the cases cited by each party, this court makes the following recommendation.

### EVIDENCE OF FAULT, MISCONDUCT, AND NEGLIGENCE

The Defendants in their motion in limine request an exclusion of all evidence of misconduct, negligence, or fault. Plaintiffs do not object to this exclusion. Therefore, the recommendation from this court is that no evidence of misconduct, negligence or fault of the defendants be allowed to be presented at trial.

### PLAINTIFFS' COUNSEL

Defendants also seek a motion in limine excluding evidence that Plaintiffs' counsel Mr. Lampert was a passenger on board flight 811. Plaintiffs do not object to this motion in limine. Therefore, this court recommends that no evidence will be allowed to be presented at trial that Plaintiffs' counsel was a passenger on board flight 811.

### INSURANCE

Defendants have also sought a motion in limine excluding any evidence about insurance or communications by or to United's insurer. Plaintiffs do not object to excluding evidence that United is covered by insurance. Plaintiffs merely suggest that if they are allowed to ask questions during voir dire concerning the juror's affiliation with United States Aviation Underwriters or United States Aviation Insurance Group that they will be satisfied with not presenting any evidence of insurance coverage by Defendants. There is no issue of control, fault or negligence in this case. There is no reason to offer any evidence concerning Defendant's insurance. Plaintiffs have not objected to excluding all evidence at trial concerning insurance, and therefore, this court recommends that all evidence of Defendant's insurance be excluded from the trial except that which will be inferred during voir dire.

### LESION CORPORELLE

Plaintiffs and Defendants agree that the Warsaw Convention governs this case as an international air accident. However, the two parties disagree as to interpretation and application. Defendants claim that the terms *lesion corporelle* of article 17 of the Warsaw Convention do not encompass emotional injuries. Plaintiffs, however, claim that emotional injuries are recoverable under the Warsaw Convention. Both parties have cited this court to several cases in support of their definition of the term *lesion corporelle* under the Warsaw Convention.

Plaintiffs rely on a recent opinion by the Eleventh Circuit Court of Appeals *Floyd v. Eastern Airlines*, 872 F.2d 1462 (11th Cir. 1989) *cert. granted,* —— U.S. ——, 110 S.Ct. 2585, 110 L.Ed.2d 266 (1990), which did a detailed analysis of the meaning of *lesion corporelle.* The court in *Floyd* held that although the *literal* French translation to *lesion corporelle* was *bodily* injury,

the French *legal* meaning for those words encompassed *mental* injury as well as bodily injury and therefore mental and emotional injuries were to be compensated for under the Warsaw Convention. In their discussion, the court reviewed several other court's decisions which have held that the term *lesion corporelle* only covers physical injuries and does not encompass mental or emotional injuries. The *Floyd* court stated, "[o]ur study of the issue has convinced us that there is nothing in French law prohibiting compensation for any particular kind of damage, including emotional trauma, provided the damage is certain and direct." *Floyd*, 872 F.2d at 1472. *Husserl v. Swiss Air Transport Company, LTD*, 388 F.Supp. 1238 (S.D.N.Y.1975), also supports the proposition that emotional injuries are recoverable under the Warsaw Convention. In *Husserl*, the court held that the drafters of the convention had no specific intent as to whether to include or to exclude mental and emotional injuries. They said, however,

> There is no evidence they intended to precluded recovery for any particular type of injury. To regulate in a uniform manner the liability of the carrier, they must have intended to be comprehensive. To effect the treaty's avowed purpose, the types of injuries enumerated should be construed expansively to encompass as many types of injury as are colorably within the ambit of the enumerated types.

*Id.* at 1250.

Defendants in opposition to *Floyd* have cited to several cases which have discussed the meaning of the language *lesion corporelle*.[1] Defendant's mainly refer this court to the United States District Court opinion which preceded and underlies *Floyd, In re Eastern Airlines, Inc., Engine Failure*, 629 F.Supp. 307 (S.D.Fla.1986). In *In re Eastern Airlines*, the district court held that *lesion corporelle* did not include mental injuries. They stated, "[l]esion corporelle has been defined to mean 'an infringement of physical integrity (l'atteninte a l'integrite physique).'" *Id.* at 313 (citation omitted). "[T]he definition does not indicate that mental injuries are to be included within its domain." *Id.* at 313–14 (citation omitted). The defendants have also cited *Burnett v. Trans World Airlines, Inc.*, 368 F.Supp. 1152, 1157 (D.N.M.1973), in which the Federal District Court for the District of New Mexico did a detailed analysis of the term *lesion corporelle* and came to the conclusion that *lesion corporelle* does not include mental injuries.[2] Defendants also refer this court to a New York case *Rosman v. Trans World Airlines, Inc.*, 34 N.Y.2d 385, 358 N.Y.S.2d 97, 314 N.E.2d 848 (1974).[3] The *Rosman* case held that if there was no physical manifestation of injury then, under the Warsaw Convention, the injuries would not be compensable. If there was a physical manifestation from the emotional distress, only the injury by physical manifestation itself would be compensable and not the mental distress. Defendants request that the *In re Eastern Airlines, Inc., Engine Failure, Burnett v. Trans World Airlines, Inc.*, and *Rosman v. Trans World Airlines, Inc.* cases, which

---

1. *In re Eastern Airlines, Inc., Engine Failure*, 629 F.Supp. 307 (S.D.Fla.1986); *Burnett v. Trans World Airlines, Inc.*, 368 F.Supp. 1152, 1157 (D.N.M.1973); and *Rosman v. Trans World Airlines, Inc.*, 34 N.Y.2d 385, 358 N.Y.S.2d 97, 314 N.E.2d 848 (1974).

2. They stated, "[t]herefore, the study equates *l'attente a l'integrite physique* with 'lesion corporelle durable,' both phrases excluding severe mental injuries. Since 'lesion corporelle durable' does not encompass permanent mental injuries, it follows that 'lesion corporelle' cannot include mere mental anguish." *Burnett v. Trans World Airlines, Inc.*, 368 F.Supp. 1152, 1158 (D.N.M.1973).

3. The New York Court of Appeals held "[a] faithful reading of the terms of the Convention leads, we believe, to the following conclusions. A claim for damages under article 17 arises 'in the event of * * * bodily injury'. The claim must therefore be predicated upon some objective identifiable injury to the body.... If the accident—the hijacking caused severe fright, which in turn manifested itself in some objective 'bodily injury', then we would conclude that the Convention's requirement of the causal connection is satisfied.... However *only* the damages flowing from the 'bodily injury', whatever the causal link, are compensable." *Id.* 358 N.Y. S.2d at 109, 314 N.E.2d at 856–57 (emphasis added).

held emotional injuries are not recoverable, should control this court's decision of the meaning of *lesion corporelle*.

After reviewing the cases cited before this court, this court finds the analysis of *Floyd* to be convincing. The 11th Circuit had the *Burnett, Rosman,* and *In re Eastern Airlines, Inc., Engine Failure* cases before it. They reviewed both the literal translation and the legal meaning. The *Floyd* court accepted the French legal contractual meaning between carrier and passenger to find *lesion corporelle* did encompass mental injury. The analysis was well reasoned and well researched. Because this court finds the *Floyd* analysis to be correct, this court recommends that Plaintiffs be allowed to put on evidence of purely emotional injury. However, even though the term *lesion corporelle* does encompass mental injuries, this court is still faced with a difficult question of what law will be used to determine whether any such mental or emotional injuries had occurred.

### PREEMPTION OF STATE LAWS

■ Plaintiffs suggests that there is a "federal common law" under the Warsaw Convention that would govern this case and preempts any state law concerning mental injuries. Plaintiffs in the alternative suggests that maritime law governs this case. Finally Plaintiffs suggests that should Colorado law govern this case, the plaintiffs' contact with the insulation dust and loud noise was enough to establish that Plaintiffs need not prove any physical manifestations of mental distress. Under Colorado law for negligent infliction of emotional distress if there was no physical contact with the plaintiff, then physical manifestations must be proven to establish mental distress. *Kimelman v. City of Colorado Springs,* 775 P.2d 51, 52 (Colo.App.1989).

Defendant's position is that if under the Warsaw Convention mental injuries are compensable, then because jurisdiction is based on diversity of citizenship, Colorado rules for conflicts of law should be applied. Defendant suggests that under Colorado's rules for conflicts of law, Colorado law

should be used to determine whether there was infliction of emotional distress. Defendants assert that Plaintiffs have not had any physical contact and since they have not asserted any physical manifestations of emotional distress, under Colorado law, Defendants assert there can be no recovery.

After an extensive review of the applicable law in the area this court has come to the conclusion that the Warsaw Convention does encompass mental and emotional injuries. This court further finds that maritime law does not apply, and the choice of law to be determined in proving those injuries is the Colorado rules for conflicts of law.

Plaintiffs cite to four cases in support of their proposition that federal common law is used to determine whether there has been emotional injuries. *In re Korean Air Lines Disaster,* 704 F.Supp. 1135, 1153 (D.D.C.1988), *aff'd, Chan v. Korean Air Lines, Ltd.,* 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989); *Benjamins v. British European Airways,* 572 F.2d 913 (2nd Cir.1978); *Air France v. Saks,* 470 U.S. 392, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985); and *Floyd v. Eastern Airlines,* 872 F.2d 1462 (11th Cir.1989). The Court, however, in *Air France* did not seek to apply a federal common law scheme of tort principals but instead used previous translations of the Warsaw Treaty to interpret the terms "accident" and "which caused the injury" of the Warsaw treaty. The court declined to address whether the Warsaw Convention provides the exclusive grounds for relief for an airline passenger and whether state grounds for relief are preempted. *Air France,* 470 U.S. at 407, 105 S.Ct. at 1346.

Plaintiffs also cite to *Floyd* in support of the proposition that the Warsaw Convention preempts Colorado law. *Floyd,* however, stated "Therefore *to the extent* that the cause of action for intentional infliction of emotional distress recognized under Florida law *conflicts* with the cause of action we recognized under Article 17 of the Convention, Florida law is preempted." *Floyd,* 872 F.2d at 1482 (emphasis added). The court in *Floyd* recognized the tort of

intentional infliction of emotional distress, but did not interpret that injury by any federal common law scheme. The court in *Floyd* did not say that state law is completely preempted, but merely stated that to the extent that the cause of action *conflicts* with the Warsaw Convention, it will be preempted.

The *Floyd* court in footnote 33 made a very complete analysis of the different courts which have held whether state law is completely preempted or not and stated,

> It is evident that where the Convention applies it preempts *inconsistent* local law. Several courts have gone farther, however, and have concluded that the Convention is to be both the exclusive avenue of recovery and the exclusive remedy in the areas it governs.... Some courts have taken the contrary view, holding that the convention merely preempts inconsistent provisions of state law.... The Supreme Court expressly has declined to address the question whether the Warsaw Convention provides the exclusive grounds for relief for an airline passenger involved in an accident. *Air France v. Saks*, 470 U.S. 392, 408, 105 S.Ct. 1338, 1347, 84 L.Ed.2d 289 (1985).

*Floyd*, 872 F.2d at 1482, n. 33 (emphasis added).

The *Floyd* court further stated,

> At this stage of the case, however, we determine only that the convention preempts those aspects of plaintiffs' state law claims *which are inconsistent* with the Convention. We decline to speculate further on the issue of whether the Warsaw Convention entirely preempts state law causes of action once its provisions are triggered by an 'accident' within the meaning of Article 17.

*Id.* at 1482 (emphasis added).

The court in *Floyd* then went on to dismiss the only causes of actions it determined were inconsistent with the provisions of the Warsaw Convention, which were punitive damages. The *Floyd* court did use Florida law to determine whether there was infliction of Emotional distress, and used the Warsaw Convention to limit liability. *See Id.*

In *Hill v. United Airlines*, 550 F.Supp. 1048, 1054 (D.Kan.1982), the court stated "The Warsaw Convention, however, is not a tariff or a contract: it does not exclusively regulate the relationship between passenger and carrier on an international flight. If the convention applies, it is a treaty, and therefore preempts local law *which conflicts* with the convention. However, if the Warsaw convention applies, it applies to limit, not eliminate, liability; and if it does not apply, it leaves liability to be established to (sic) traditional common law rules." *Id.* (citations omitted) (emphasis added). In *In re Air Crash Disaster at Gander Newfoundland, on December 12, 1985*, 684 F.Supp. 927, 933 (W.D.Ky.1987), the court also allowed for the state law claims under the Warsaw Convention. They stated, "[a]t that time, the court did not specify which state law claims were allowed under the Convention and which were pre-empted by the Convention. The court now holds that the Warsaw Convention by its terms and history allows *compensatory* damages claims against carriers *arising under state law* but excludes *punitive* damages claims." *Id.* (emphasis added).

Both of these two districts have held that state law claims are not completely preempted unless they conflict with the terms of the convention. The district of Kansas is especially helpful in resolving this issue since they will be attempting to establish the rule that the 10th Circuit will follow. It is recommended that state law is not preempted unless it conflicts with the Warsaw Convention.

## FEDERAL COMMON LAW AND APPLICATION OF STATE LAW

Plaintiffs also rely on *In re Korean Air Lines Disaster*, 704 F.Supp. 1135 (D.D.C. 1988) in support of their assertion that state law does not apply. The court, however, in *In re Korean* was seeking to determine whether under the Warsaw Convention the parties were entitled to a jury trial procedurally and did not interpret the sub-

stantive law. The court did state "that the Warsaw Convention creates, by its own force, a cause of action for wrongful death," *Id.* at 1153, however, the court did not state how that cause of action would be determined. At no point does *In re Korean* assert that state law is completely preempted by the Warsaw Convention. The court does indicate, however, that " 'In the absence of specific statutory guidance,' the court should resolve the issue by resort to the federal common law, which clearly points in the direction of allowing a jury trial." *Id.* at 1154. The court in *In re Korean Air Lines Disaster*, based its authority for using federal common law on *Harris v. Polskie Linie Lotnicze*, 820 F.2d 1000 (9th Cir.1987).

The court in *Harris v. Polskie Linie Lotnicze*, used federal common law to determine what choice of substantive law would be used to determine the underlying injury. They held that federal common law principals should be used to determine the choice of law in cases not based on diversity of citizenship. Under a federal common law scheme, the court applied the Restatement Second of Conflicts of Laws principals to determine what state's law applied to that airline disaster. Under the Restatement the court would look to the place of the injury as the starting point in determining the choice of law. In *Harris*, the court looked to Polish law to determine how the injuries would be defined. *Harris* was based completely on "federal question" jurisdiction. The Ninth Circuit which decided *Harris*, however, has held that *in cases which are based on diversity*, the court will apply the choice of law rules of the state in which the action is brought.[4]

The New York District Court for the Southern District of New York has also applied the state's choice of law rules in diversity cases. In *Husserl v. Swiss Air Transport Company, Ltd.*, 388 F.Supp. 1238 (S.D.N.Y.1975), the court stated,

> Although unable to locate any authority directly on point, I believe that the otherwise applicable substantive law should be determined by applying the appropriate conflicts of law principles. Since this is a diversity case in a federal court in New York, the appropriate principles are New York conflicts of law principles.

*Id.* at 1252.

If the case is based in part or in whole on diversity of citizenship, the New York district courts will apply their own choice of law rules.

■ Plaintiffs cite to *Benjamins v. British European Airways*, 572 F.2d 913 (2nd Cir.1978), *cert. denied*, 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979), which supports Plaintiffs' proposition that state law is preempted by the Warsaw Convention. There are other cases which support Plaintiffs' proposition. *See Floyd*, 872 F.2d at 1482, n. 33 (discussion of the different approaches). After a review of these cases and those cases cited by the Defendants, this Court holds that state law is not preempted. Under this federal diversity of citizenship action, Colorado's choice of law principles should be used.

Even if federal common law was used to determine which choice of law will be used, under federal common law the courts will apply the same choice of law principles as Colorado's choice of law. Both Colorado and the federal common law choice for choice of law principles is found under the

---

**4.** In *In re Aircrash in Bali, Indonesia on April 22, 1974*, 684 F.2d 1301, 1307 (9th Cir.1982), the Ninth Circuit stated,

> Since both the Causey and Ryder cases were filed in California, California's choice of law rules must be applied. Plaintiff and Pan Am appear to agree on the substance of California's choice of law rule, but disagree on its application to the facts of this case.
>
> . . . . .
>
> This is clearly not a case in which Congress intended to preempt all state legislation in the field, since the Convention specifically re-

quires the application of local law to some issues. However, federal law may also preempt the application of state law where the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'

*Id.* (citations omitted).

The court further held "that California law is preempted by the Warsaw convention to the extent that California law would prevent the application of the Convention's limitation on liability," *Id.* at 1308, but used state law to determine the underlying injury.

Restatement (Second) Conflicts of Laws. *Harris v. Polskie Linie Lotnicze,* 820 F.2d at 1003 (federal choice of law principles); *Dorr v. Briggs,* 709 F.Supp. 1005 (D.Colo. 1989) (state choice of law principles). It is recommended that the Colorado law be applied for reasons further stated in this opinion.

## MARITIME LAW

 Therefore unless the law is *otherwise* preempted, this court will apply Colorado's choice of law principles. However, in determining the applicable law to be applied to this case, it is also important to determine whether general maritime preempts the applicable state law in this case. Plaintiffs suggest that even if federal common law is not used to determine the underlying injury, the law which should be applied would be that of federal maritime law. In *In re Korean Air Lines Disaster,* 704 F.Supp. 1135 (D.D.C.1988) the court was faced with an airline incident in which the Soviet Union shot down one of KAL's jets over the Sea of Japan after that airplane had invaded their airspace. The court in *In re Korean* used general maritime law to apply the Death on the High Seas Act. *See also Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 270, 93 S.Ct. 493, 505, 34 L.Ed.2d 454 (1972).[5] If the aviation tort claim occurs over navigable waters and is between two points which do *not* occur within the continental United States, then general maritime law applies to the action. Plaintiffs have cited this court to an unpublished opinion *In re Air Disaster Near Honolulu, Hawaii on February 24, 1989,* MDL 807 slip op. at 4 (August 13, 1990). That case involved the same underlying incident as the present action, however the alleged wrong in that case was for wrongful death. In that case the Ninth Circuit held that general maritime law applied rather than state law. They stated,

A maritime tort "requires a showing that: (1) the alleged wrong occurred on or over navigable waters, and (2) the

wrong bears a significant relationship to traditional maritime activity." *Williams v. United States,* 711 F.2d 893, 896 (9th Cir.1983), citing *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 268 [93 S.Ct. 493, 504, 34 L.Ed.2d 454] (1972) (emphasis added). *See also Owens–Illinois, Inc. v. United States District Court,* 698 F.2d 967, 969 (9th Cir. 1983) ("a suit in tort is cognizable in admiralty only if the tort occurred on or over navigable waters"). Requirement (1) is clearly met here. It is not disputed that the cargo door blew off the United jet when it was approximately 85 miles offshore of Hawaii, bound for New Zealand. Requirement (2) is also met. The Supreme Court has held that the transoceanic transportation of passengers by air is "a function traditionally performed by waterborne vessels" and satisfies the "significant relationship" criteria. *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 218–219 [106 S.Ct. 2485, 2492–2493, 91 L.Ed.2d 174] (1986).

*In re Air Disaster Near Honolulu, Hawaii on February 24, 1989,* MDL 807 slip op. at 3.

This court however does not agree with Plaintiffs' proposition that this court should also apply maritime law in this case. The unpublished opinion is not controlling authority. Also, in *In re Korean Air Lines* and in the unpublished opinion, both courts were faced with wrongful death actions. Wrongful death actions are specifically provided for in the Death on the High Seas Act. However, there is no provision under the maritime laws which provides for negligent infliction of emotional distress. *See Gaston v. Flowers Transportation,* 866 F.2d 816, 820–21 (5th Cir.1987). In *Gaston,* the court sought to determine whether a seaman could recover under the Jones Act or under general maritime law for negligent infliction of emotional distress. The court held that there was no such recovery under the maritime law. *Id.*

---

5. In this case the Court held that there was no federal admiralty jurisdiction over a claim from an airline disaster which occurred between two points within the continental United States in the absence of any applicable statute.

In *DeLoach v. Companhia de Navegacao Lloyd Brasileiro*, 782 F.2d 438, 443 (3rd Cir.1986), the court held that a minor child whose father had been injured in his employment on a ship did not have a cause of for infliction of emotional distress. The court stated "no federal statutory or decisional law provides for such a cause of action. Some states allow recovery where the plaintiff either witnesses the accident from outside the 'zone of danger' or comes on the scene soon after it and while the injured person is still present.... The common law provides no support for the plaintiff's maritime claim, nor do we perceive any reason why the maritime law should venture into these unchartered waters that state courts have expressly declined to enter. Thus, we conclude that the trial court did not err in dismissing the plaintiff's emotional distress count for failure to state a claim." *Id.* (citations and footnote omitted). In *Kiffe v. Neches–Gulf Marine, Inc.*, 709 F.Supp. 743 (E.D.Tex. 1989), the court held that a seaman who witnessed an accident in which a fellow crew member was killed was not entitled to recover under general maritime law for infliction of emotional distress. They stated, "[t]his list does not include purely emotional injuries triggered by witnessing this concededly terrible injury to a shipmate. Whereas Gaston's bruised elbow fell short of the required physical injury for this action, Kiffe calls this court's attention to no physical injury upon which mental anguish could be founded." *Id.* at 745. Therefore, even if this court were to apply maritime law, Plaintiffs may be precluded from recovering if there was no physical injury.

■ Although the alleged wrong took place over navigable waters, the alleged wrong does not bear a significant relationship to traditional maritime activity. The tort of infliction of emotional distress has not been recognized under traditional maritime law. In lieu of the fact that Plaintiffs have cited this court to no case which has used maritime law to apply the tort of infliction of emotional distress in an airline incident under the Warsaw Convention, and in lieu of the fact that maritime law does not provide for infliction of emotional distress, it is recommended that Colorado's choice of law applies in this case. *Floyd*, 872 F.2d at 1482. (The court in *Floyd* applied Florida state law to the offense infliction of emotional distress. The facts were substantially similar in that the engine failure in *Floyd* also took place over navigable waters, and the Warsaw Convention was the applicable federal law).

## COLORADO'S CHOICE OF LAW PRINCIPLES

■ Under Colorado's choice of law rules the law of the state with the most significant relationship to the claims will be used. Under *Dorr v. Briggs*, 709 F.Supp. 1005 (D.Colo.1989), this court held,

To identify the state with the most significant relationship to the parties and the occurrence, the Court must consider the relevant factors included in Section 6 of the Restatement (Second) Conflict of Laws:

(a) the needs of the interstate and international systems;

(b) the relevant policies of the forum;

(c) the relevant policies of other relative interested states and the interests of those states in the determination of the particular issue;

(d) the protection of justified expectations;

(e) the basic policies underlying the particular field of law;

(f) certainty, predictability, and uniformity of result; and

(g) ease in determination and application of the law to be applied.

In applying the principles of § 6 to determine the law applicable to a particular issue, Section 145(2) of the Restatement (Second), Conflict of Laws lists the following contacts to consider:

(1) the place where the injury occurred;

(2) the place where the conduct causing the injury occurred;

(3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and

(4) the place where the relationship, if any, between the parties is centered. According to § 145, the court must evaluate and assign a relative degree of importance to each contact with respect to the particular issue under consideration. Moreover, in personal injury and wrongful death actions, the language of the Restatement of Conflicts suggests that the law of the state of injury should apply unless some other state has a more significant relationship to the litigation. Rest. (Second) Conflict of Laws §§ 146 and 175.

*Id.*

Flight 811 departed from Honolulu, Hawaii. The asserted conduct which caused the accident to occur took place in Hawaii. The alleged injury took place over international waters. The state of Colorado is the domicile of the Plaintiffs and is a place of business for Defendant. It appears that the parties' business relationship occurred in Colorado. I find that Colorado has the most significant relationship to the parties and that Colorado law should be used to the extent that it does not conflict with the Warsaw Convention.

### THE RELEVANT DURATION OF INJURY

If evidence is allowed solely for mental or emotional injuries, must those injuries be limited to that which occurred during the flight (the 20 or so minutes of decompression, landing and evacuation) or does it include that which occurred after the Plaintiffs landed (seeing the actual extent of the damage to the plane and hearing what occurred to other passengers and crew)? Defendants cite to *Millican v. Wolfe*, 701 P.2d 107 (Colo.App.1985), *cert. dismissed*, 726 P.2d 647 (1986), in support of their assertion that Plaintiffs can only recover on distress suffered at and during the accident. After the Plaintiffs reached the ground, Defendants claim that Plaintiffs could no longer claim emotional distress damages. *Millican* states that the mother could only recover for the damages of seeing the accident and did not flow over into the damages (pain and suffering of the

mother) because of the subsequent death of the child. Plaintiffs cite to *Brooks v. Chrysler Corp.*, 786 F.2d 1191, 1198 (C.A. D.C.1986), *cert. denied*, 479 U.S. 853, 107 S.Ct. 185, 93 L.Ed.2d 119 (1986); *Conway v. Chemical Leaman Tank Lines, Inc.*, 525 F.2d 927, 930 (5th Cir.1976); and *International Merger and Acquisition Cons. v. Armac Enterprises*, 531 F.2d 821, 823 (7th Cir.1976) for the proposition that Fed.R. Evid. 401 is liberally interpreted to allow broad admissibility. They also state that "[s]uch testimony is relevant to the issue of causation as to the nature and extent of Plaintiffs' damages." *Plaintiff's Joint Response to United's Motion In Limine and/or Motion to Dismiss*, p. 3.

The events immediately following disembarking the plane would be part of the same occurrence and not remote in time. The asserted testimony of what Plaintiffs saw after they landed would be relevant to the injury from emotional distress as to the entire incident. The death of the child was a separate occurrence as to the accident in *Millican v. Wolfe*. Also in the *Millican* case, plaintiff had an alternative means of recovery for the distress under the theory of wrongful death.

### WHO MAY TESTIFY CONCERNING THE EMOTIONAL INJURIES

The Plaintiffs intend to call other air passengers as witnesses and in the Noble case, the spouse of Mr. Noble. The Plaintiffs assert that United's objection to the witnesses is an attempt to keep the "horrors" away from the jury.

Whether evidence is relevant at trial is dependent on whether the evidence makes the existence of any fact that is of consequence to the determination of the case more probable or less probable then it would be without the evidence. *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 838 (10th Cir.1988) *cert. denied*, 490 U.S. 1021, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989). Exclusion of relevant evidence should be used sparingly and only if the probative value is outweighed by its unfair prejudice to the other party or confusion to the jury. *K–B Trucking Co. v. Riss Inter-*

*national Corp.,* 763 F.2d 1148, 1155 (10th Cir.1985); *Rigby v. Beech Aircraft Co.,* 548 F.2d 288, 291 (10th Cir.1977).

The evidence of the spouse and other passenger's reactions to the accident is relevant to the Plaintiffs' claims. The jury should have the testimony to determine whether the reactions of the Plaintiffs were reasonable in comparison to the passengers around them. It is recommended that the passengers and the spouse be permitted to testify.

### VACATION TIME AND EMOTIONAL INJURY

█ Defendants assert that no evidence regarding diminished or lost expectation of vacation be allowed in to prove the emotional distress damages. They assert that such damages are improper under article 17 of the Warsaw Convention.

█ Injury for lost vacation time is not a proper recovery for the infliction of emotional distress. Loss of vacation time is not a part of the accident, but is a separate injury resulting from the breach of contract to carry plaintiff to his intended destination. Lost vacation time would more properly be recovered under a contractual theory. In *Hill v. United Airlines,* 550 F.Supp. 1048. The court stated,

> Damages for delays are governed by Article 19 of the Warsaw Convention, which provides: "The carrier shall not be liable if he proves that he and his agents have taken all necessary measures to avoid the damage or that it was impossible for him or them to take such measures."

*Id.* at 1051.

The Convention governs actions for the delay of passengers. It is preemptive of any other claims for mental distress due to Plaintiffs' delay in vacation. The Warsaw Convention does not authorize recovery for the vacation delay. It is recommended that no evidence be allowed as to lost vacation time for emotional distress.

IT IS THEREFORE RECOMMENDED that Defendant's Motion's in Limine be granted in part and denied in part in accordance with the foregoing analysis.

FURTHER, IT IS ORDERED that under Rule 605 of the Local Rules of Practice of the United States District Court for the District of Colorado, the parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz,* 447 U.S. 667, 676–83, 100 S.Ct. 2406, 2412–2416, 65 L.Ed.2d 424 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate that are accepted or adopted by the District Court. *Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985).

DATED at Denver, Colorado this 18th day of October, 1990.