1McKAY, J.
The plaintiff Joyce Gaynor appeals a judgment against her for psychological damages that she sustained as a consequence of viewing an automobile accident on the 1-610.
On July 22, 1994, the plaintiff, Joyce Gay-nor was driving her car eastbound on 1-610 when her car began to sputter because of water accumulation on the road, causing her to pull over to the left side of the interstate. Ms. Gaynor and Ms. Layosa, her companion, left the vehicle to seek assistance. They climbed over a concrete highway barrier and across three westbound lanes and into an emergency lane on the opposite side of the highway from the scene of the incident. When they were approximately 100 feet away from the scene they heard a loud crash. The defendant’s vehicle had spun out of control due to puddling on the road and had hit Ms. Gaynor’s stalled vehicle causing considerable damage. The defendant insurance company State Farm paid Ms. Gaynor for her property loss in the amount of $2,858.68.
bThe appellant claims that after the accident she experienced severe emotional trauma and received two years of treatment for these traumatically induced complaints. These complaints included chest pains, anxiety attacks, depression, nausea, loss of appetite, shortness of breath and headaches. In her petition for damages she alleged that her condition resulted from viewing the destruction of her automobile.
A bench trial was held on February 5, 1998, and a judgment was rendered on February 19, 1998, against the appellant. The appellant claims that the trial erred when it found that she was not within the zone of danger when the impact occurred, that she suffered no severe physical or emotional injury as a result of viewing her property damaged, and that she was not entitled to a recovery for her damages.
In reviewing the factual findings of a trial court, an appellate court is limited to a determination of manifest error. Hill v. Morehouse Parish Police Jury, 95-1100 (La.1/16/96) p. 4, 666 So.2d 612, 614; Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, 745; Stobart v. State through Dept. of Transp. And Development, 617 So.2d 880 (La.1993). “It is well settled that a court of appeal may not set aside a trial court’s ... finding of fact in the absence of ‘manifest error’ or unless it is ‘clearly wrong, and where there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review even though the appellate court may feel that its own evaluations and inferences are reasonable ...” Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989). “The reasons for this well settled principal of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the allocation of trial and *1281 appellate functions between the respective courts” ... where two permissible views of the evidence exist, the fact-finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883 (La.1993), (citing, Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973)).
The appellant claims that the trial court erred in failing to find that she was in the “zone of danger” when the impact to her automobile occurred. The appellant is advancing two separate theories of recovery based on mental anguish; one is based on a “zone of danger” theory and the other based on loss of property. The law in Louisiana is very nebulous as to the actual definition of “zone of danger.” “The zone of danger rule provides some mechanism for recovery of emotional injuries absent any physical contact, which result from the witnessing of peril or harm to another (emphasis added) if the plaintiff is also threatened with physical harm as a consequence of the defendant’s negligence.” Anselmi v. Penrod Drilling Corp., 813 F.Supp. 436 (E.D.La.1993). In Gaston v. Flowers Transp., 866 F.2d 816 (5th Cir.1989), the plaintiff witnessed his half brother being crushed to death between a barge and a tugboat. The plaintiff urged that recovery should be permitted under a zone of danger theory. Even though the court recognized that Louisiana law does allow recovery for those within ka zone of danger in relation to the injuring events, the court maintained that the plaintiff had made no showing that he even thought himself to be in danger. The plaintiff was not a direct victim. Id. at 820. In Anselmi, the plaintiff was a crane operator on a jack-up rig who had gone to bed in the living quarters when he was awakened by a loud whistle. The rig exploded and many members of the crew were injured. The plaintiff suffered no physical injury but was diagnosed with post traumatic stress disorder. The court maintained that the circumstances surrounding the fear-inducing occurrence may themselves supply sufficient indicia of genuineness. “It is for the jury to decide questions such as the existence, severity and reasonableness of the fear.” Anselmi, supra, at 440 (citing Hagerty v. L & L Marine Services, 788 F.2d 315, 318 (5th Cir.1986)). The Anselmi Court also noted that:
“Under the right circumstance, one may recover for purely emotional harm under a zone of danger theory if the facts place the plaintiff within the definable zone. What is necessary for a valid claim is that the claimant must have been objectively within a zone of danger, he must have feared at the time of the incident that his life or person was in danger and his emotional injuries must be reasonably foreseeable consequence of the defendant’s alleged negligence.”
Anselmi, supra, 813 F.Supp. at 439-42. The zone of danger theory preserves traditional tort doctrines of negligence, legal causation, and foreseeable risks. Id. at 443.
The zone of danger theory of recovery is employed in situations where the plaintiff has an impending fear of death or injury due to his proximity to an actual or near accident. We are reticent to expand this definition. What is clear fefrom the record in the instant case is that there is no way Ms. Gaynor was in the “zone of danger.” Accordingly, the trial court properly denied her claim for emotional distress based on a “zone of danger” theory of recovery.
The appellant additionally contests the trial court’s denial of recovery for non-peeuni-ary losses for the damage to her vehicle based on mental anguish/emotional distress. The appellant claims that as result of her property damage she developed a post traumatic stress disorder.
It is well established in Louisiana jurisprudence that recovery for mental anguish/emotional distress from property damage is possible even without actual physical injury or a manifestation of the physical injury. Our court in Blache v. Jones, 521 So.2d 530 (La.App. 4th Cir.1988), citing a long line of Louisiana jurisprudence, identified the four situations when a mental anguish award can result from property damage. The situations are:
((1) When property is damaged by an intentional or an illegal act;
*1282 (2) When property is damaged by an act for which the tortfeasor will be strictly liable or absolutely liable;
(3) When property is damaged by acts constituting a continuing nuisance;
(4) When property is damaged at a time in which the owner thereof is present or situated nearby and the owner experiences trauma as a result.
Blache, 521 So.2d at 531 (citing First of Georgia Insurance Company v. Cohen, 398 So.2d 1209, 1211 (La.App. 4th Cir.1981)).
Furthermore, the mental anguish must be a real mental injury; the usual worry or inconvenience over the consequences of the property damage will not justify an award for mental anguish. Blache, 521 So.2d at 531.
bln Blache, the husband sued for recovery for emotional distress/mental anguish to his wife and minor children for the loss of the family home and its contents as a result of the intentional acts of the defendants. There were significant personal losses to the family including many irreplaceable items. We noted that, depending on the testimony at trial, emotional injury associated with the loss of this particular type of item might be compen-sable. Id. (citing Broome v. Gauthier, 443 So.2d 1127 (La.App. 4th Cir.1983), writ denied, 445 So.2d 449 (La.1984)). Furthermore in Blache, the defendants argued that these damages were not recoverable because the plaintiffs did not observe the damage as it occurred. Personal observation is not a prerequisite in every case to recover for mental anguish/emotional distress for property damages.
In the instant case the appellant was not directly on the scene to witness the actual collision but only saw the effects of the collision. According to her testimony she was concerned over the damage to the vehicle because she bought the car for graduation and it was going to be paid off. This amounts to mere worry or inconvenience over the consequences of property damage. She was not in impending or imminent fear of death, but said that she could have been killed if she had been in the vehicle: she was approximately 100 feet from the scene. The appellant claims that she was so traumatized after the accident that she was unable to speak. Yet, she spoke to the police after the accident and told the police she was O.K. and refused medical treatment.
The doctors’ depositions, which were stipulated to, in particular Dr. Gold, a.gastrointestinal specialist, said in deposition that the auto accident did not cause the gastrointestinal symptoms but may have caused anxiety. Dr. Gold also mentions that the appellant had a previous accident that she did not report to him and that frshe had pre-accident complaints similar to the complaints after her car was damaged. She told him that she had lost 17 pounds over the previous six months because of chest pains, which caused her not to eat. His diagnosis was lower esophageal ring and gastroesophageal reflux, which was not traumatieally induced. He advised her to seek psychiatric help for her anxiety problems.
Dr. Bayer, the appellant’s treating psychiatrist, who did not see the appellant until July 31,1995, one year following the incident, said that the post traumatic stress disorder was because of viewing the damage to her automobile. Dr. Bayer does mention that she never interviewed the appellant out of the presence of her girlfriend, Ms. Layosa, and that Ms. Layosa answered most of the questions
Dr. Scalco saw the appellant five months before the accident when she complained of cold like symptoms. Additionally she complained of fatigue and at her request was given vitamin B-12 injections. Approximately nine months after the incident she returned to Dr. Scalco complaining of a sore throat but did not complain of any psychiatric trauma or injuries related to the auto collision.
Dr. Culver, the independent medical examiner, insisted that his interview with the appellant be conducted outside the presence of the appellant’s girlfriend, Ms. Layosa. He also articulated the psychiatric basis for a one-on-one interview, with a patient and that possibly Dr. Bayer’s diagnosis may be faulty because Ms. Layosa not Ms. Gaynor answered most of the questions asked by Dr. Bayer. After the one on one interview he *1283 diagnosed the appellant as a malingerer who suffered from depression which could be related to alcoholism. He felt that her recurring dreams of the accident were inconsistent with post traumatic stress disorder and that this was not the pattern of dreaming that one would see in a patient with PTSD.
bln the instant ease there is a mere loss of property, which has been reimbursed to the plaintiff by the defendant. There is also conflicting testimony of the plaintiffs doctors and also the IME concerning the psychological evaluations. Furthermore, the appellant fails to establish the causal relationship of her property damage to her complained of mental anguish. The facts of this case adequately distinguish those cases that awarded compensation for mental anguish, pain and suffering resulting from the loss of property. There are many factors to consider in determining the degree of mental stress suffered and whether the degree of stress engendered by the circumstances were beyond that which a reasonable person may expect to cope. The trial court was in the best position to witness and synthesis the materials presented in a trial on the merits. The record clearly supports the trial court’s ruling. Accordingly, the trial court is affirmed.
AFFIRMED.
LANDRIEU, J., concurs in the result.