**Mickey A. ANSELMI**

v.

**PENROD DRILLING CORPORATION.**

**Civ. A. No. 90–1449.**

United States District Court, E.D. Louisiana.

Feb. 18, 1993.

---

Johnny X. Allemand, Thibodaux, LA, Eldon E. Fallon, Jack C. Benjamin, Stevan C. Dittman, Gainsburgh, Benjamin, Fallon, David & Ates, New Orleans, LA, for plaintiff.

Alan K. Breaud, Roy, Carmouche, Bivins, Judice, Henke & Breaud, Lafayette, LA, for defendant.

### ORDER AND REASONS

FELDMAN, District Judge.

Before this Court is defendant's motion to dismiss the plaintiff's suit for failure to state a claim upon which relief may be granted, or alternatively, for summary judgment. Penrod insists that the plaintiff cannot recover under the Jones Act or general maritime law for a purely emotional injury. Thus, this motion renews the *Hagerty–Gaston–Plaisance* dialogue.

#### Background

The lawsuit arises out of a November 1989 explosion on Penrod's jackup rig. At the time of the explosion, the plaintiff, who was a crane operator on the rig, had already worked a full shift, eaten dinner and gone to bed in his room on the third level of the living quarters. His particular room was located on the starboard side of the

living quarters and a short distance to the door leading to the deck and lifeboat.

The plaintiff first knew something was wrong that early November morning when he heard high pressure being released. He at first thought it was an alarm clock, but when the sound of the alarm did not go off, he realized it was something more serious. He looked outside and saw the toolpusher sounding the general alarm. Shortly thereafter, the rig was rocked by two explosions.

The plaintiff dressed and immediately went to the lifeboat. While the plaintiff readied the lifeboat, he saw flames coming from a room between fifty and seventy-five feet from him. When no other crew member came to the lifeboat, the plaintiff returned to the living quarters and was instructed by the tool pusher to go downstairs and assist in tending to injured crew members. Mr. Anselmi did so and remained with the injured men until the helicopters arrived to evacuate them. While helping the injured, he observed severe damage to the rig. The area surrounding the explosion was demolished. Later that afternoon, the plaintiff asked to be relieved of duty and transported off the rig. Between the time of the incident and his evacuation, the plaintiff maintains that he was an emotional wreck and spent much of the time crying. Mr. Anselmi believes that much of his fright resulted from his realization that if the explosion had been delayed and more gas allowed to escape, the entire rig would have been at risk. (After the initial two explosions, the rig experienced no further emergencies.)

It is undisputed that the plaintiff experienced no physical injuries as a result of the events on November 23, 1989. To this day Mr. Anselmi is, by his own admission, physically capable of doing any type of work. But he claims to be emotionally disabled. One week after the explosions, the plaintiff was reassigned to another Penrod rig; he was unable to complete more than six hours of his new assignment.

Once he returned home, plaintiff says he continued to experience episodes of nervousness, anxiety, nightmares, and an inability to sleep. Dr. Charles R. Smith, a psychiatrist, diagnosed plaintiff as suffering from acute post-traumatic stress disorder.

In early August 1990, the plaintiff was refused employment because he had a pending lawsuit. According to the plaintiff, he reacted violently and was a threat to himself and his family. Mr. Anselmi was hospitalized at Ochsner and again diagnosed with post-traumatic stress disorder. The explosion on the rig was deemed the cause of this disorder.

The plaintiff has incurred hospital and medical expenses of over $16,000. Despite his many requests, he has not received maintenance and cure.

## I.

### A.

 Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[1] No genuine issue of fact exists if the record, taken as a whole could not lead a rational trier of fact to find for the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

 The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *See id.* Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at

---

1. The defendant has moved under Rule 12(b)(6) for dismissal for failure to state a claim upon which relief may be granted or alternatively for summary judgment. Because the parties have referenced materials outside the pleadings, this Court will consider this motion to be one for summary judgment. F.R.C.P. 12(b), as amended.

249–50, 106 S.Ct. at 2511 (citations omitted). Summary judgment is proper if the party opposing the motion fails to establish an essential element of his case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

This motion requires the Court to determine whether, under any theory of law, a seaman may recover for purely emotional injuries under the Jones Act and general maritime law if he suffered no physical contact. It is an issue that has been a frequent caller to the Fifth Circuit's door, but has yet to be invited in to sit at the table.

#### B.

Although the Jones Act grants a cause of action for any seaman who, in the course of his employment, suffers death or "personal injury," *see* 46 U.S.C. app. § 688(a), there is no indication whether the Act encompasses purely emotional harm. The Supreme Court has been particularly vague on the question, observing in a case under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. (the doctrinal basis for the Jones Act) that

> the question whether one can recover for an emotional injury may not be susceptible to an all inclusive "yes" or "no" answer. As in other areas of the law, broad pronouncements in this area may have to bow to the precise application of developing legal principles to the particular facts at hand.

*See Atchison, Topeka, and Santa Fe Railway Co. v. Buell,* 480 U.S. 557, 570, 107 S.Ct. 1410, 1418, 94 L.Ed.2d 563 (1987). The Court went on to suggest that the appropriate place to begin this determination would be the common law. *Buell,* 480 U.S. at 568, 107 S.Ct. at 1417. But the common law has hardly been outreaching

with answers. See Note, 66 Tulane L.Rev. 1540 (1992).

While the Supreme Court's decision in *Buell* has been interpreted as an invitation to consider whether one may recover under FELA and the Jones Act for purely emotional injuries, most circuits have viewed such an extension of traditional tort doctrine with suspicion or distaste. They have clearly preferred the presence of a physical impact or contact. *See Hammond v. Terminal R.R. Ass'n of St. Louis,* 848 F.2d 95, 96 (7 Cir.1988) (foreclosing FELA actions for emotional injuries absent physical contact or threat of contact); *Moody v. Maine C.R. Co.,* 823 F.2d 693, 694 (1 Cir.1987) (door to recovery for wholly mental injury somewhat ajar but not by any means wide open); *Adkins v. Seaboard Sys. R.R.,* 821 F.2d 340, 342 (6 Cir 1987) (intentional infliction of emotional distress not cognizable under FELA), *cert. denied,* 484 U.S. 963, 108 S.Ct. 452, 98 L.Ed.2d 392 (1987).[2] The Ninth Circuit stands alone in moving firmly in this direction. *See Taylor v. Burlington N. R.R.,* 787 F.2d 1309, 1313 (9 Cir. 1986) ("railroad employees may assert [FELA] claims ... for wholly emotional injuries"); *Buell v. Atchison, T., & S.F. Ry.,* 771 F.2d 1320, 1322 (9 Cir.1985). In our circuit, the issue has been discussed several times, but without a final definitive doctrinal statement. Recently, however, the Fifth Circuit seems to have outlined a narrow theory of possible recovery under the Jones Act for purely emotional harm, a theory that the Court finds applicable to this case. A review of our case literature sets the stage.

#### II.

#### A.

The Fifth Circuit first spoke to the issue in *Hagerty v. L & L Marine Services,* 788 F.2d 315 (5 Cir.1986), in which the court reversed a district court's ruling that there could be no recovery for fear of developing cancer under the Jones Act. The Jones Act, the court wrote, is "intended to pro-

---

2. The Third and Fourth Circuits have declined to reach this issue. *See Holliday v. Consol. Rail Corp.,* 914 F.2d 421, 425 (3 Cir.1990), *cert. de-*

*nied,* — U.S. ——, 111 S.Ct. 970, 112 L.Ed.2d 1057 (1991); *Elliott v. Norfolk & W. Ry.,* 910 F.2d 1224, 1229 (4 Cir.1990).

vide broad coverage for all work-related 'injuries,' whether characterized as mental or physical." *Id.* at 318. The court maintained that the "circumstances surrounding the fear-inducing occurrence may themselves supply sufficient indicia of genuineness. It is for the jury to decide questions such as the existence, severity and reasonableness of the fear." *Id.* The facts in *Hagerty*, however, were not truly suited for resolving this issue because the plaintiff arguably experienced subtle physical impact: he was doused twice with carcinogenic chemicals and suffered an initial burning sensation as well as other physical symptoms.

Although the arguable physical impact encountered in *Hagerty* did not receive much initial attention, the fact that the plaintiff in *Hagerty* experienced some kind of physical impact was later used, among other distinctions, to sharply narrow the scope of that decision when the Fifth Circuit was confronted for the first time with a purer claim for damages for emotional harm in *Gaston v. Flowers Transportation*, 866 F.2d 816, 819 (5 Cir.1989). In *Gaston*, the plaintiff tried to recover for the emotional distress caused when he witnessed his half-brother get crushed to death during a collision between a barge and a tug boat. The court refused to extend Jones Act liability to include Gaston's "bystander liability," which the court defined as "an attempt to recover damages for witnessing the death or injury of another crew member, without significant injury or fear of injury to himself." *Id.* at 817. Particular significance, then, was given to the fact that "no evidence was presented tending to show that Gaston was ever concerned for his own safety." *Id.* at 819. The court in *Gaston* saw the creation of liability to one who could not claim the status of a direct victim as requiring significant and unwelcomed innovations:

permitting a recovery for purely emotional injuries ... and permitting such a recovery, not for such injuries resulting from physical trauma to the Plaintiff, or even from his fear of such trauma to himself, but for the emotional injuries stemming from witnessing a bad sight.

*Id.* The *Gaston* plaintiff had urged that recovery should be permitted under a zone of danger theory, even for bystanders. Even though the *Gaston* court recognized that Louisiana law does allow recovery for those within a zone of danger in relation to the injuring events, the court maintained that the plaintiff had "made no showing that he even thought himself to be in danger. Neither his deposition nor his answers to interrogatories indicate that he was concerned that he might be harmed when [his brother] was caught between the barges." *Id.* at 820. The court added it thought there to be

something incongruous in undertaking such an extension of liability (for purely emotional injury) to seamen and railroaders. These have knowingly and voluntarily chosen callings which, while today perhaps not fairly termed dangerous, yet do involve braving certain hazards and are traditionally not well suited to the squeamish or fainthearted. To undertake to enlarge such persons and damages in proportion to the delicacy of their emotional reaction seems a curious policy.

*Id.* at 820. *Gaston* reluctantly preserved "zone of danger" as a possible theory of recovery for purely emotional harm, but held it had no application to the facts there. Mr. Gaston was not a direct victim, and he never thought he was in physical danger.

Where *Hagerty* seemingly moved this circuit somewhat closer to recovery for purely emotional harm, *Gaston* paused and backed off but refused outright repudiation of all theories of recovery. Two recent cases again placed the issue forthrightly before Fifth Circuit. *See Ainsworth v. Penrod Drilling Corp.*, 972 F.2d 546 (5 Cir.1992); *Plaisance v. Texaco, Inc.*, 966 F.2d 166 (5 Cir.1992).

### B.

The history of the *Plaisance* case is particularly useful in helping us determine where we seem to be today in this journey. That case involved a tug boat captain who was towing a barge that struck an underwater gas pipeline. The pipeline ruptured

and an explosion followed. The resulting fire caused damage to the barge and to the two in the rear of the flotilla, but not to the one controlled by Mr. Plaisance. The fire was extinguished within thirty minutes without physical injury to any of the men involved. As a result of these events, the plaintiff was diagnosed with and hospitalized for post-traumatic stress disorder, arising from his fear that he or someone else could have been killed in the explosion or fire. The original three judge appellate panel, in a split decision, held that "a claim for an emotional injury caused by emotional distress negligently inflicted, even without an accompanying physical injury or physical contact, is cognizable under the FELA." *Plaisance v. Texaco, Inc.*, 937 F.2d 1004, 1009 (5 Cir.1991). This decision was based in part on the recognition that "an emotional injury can be every bit as harmful, debilitating and destructive of the quality of one's life as a physical injury." *Id.* The decision embraced a solution through the utility of a cause and effect model, but denied recovery because

> the injury complained of [was] not a reasonably foreseeable consequence of the alleged negligence. One would not reasonably expect a normally constituted seaman, much less a senior, very experienced tugboat captain, to have the emotional reaction alleged by Plaisance who, objectively assessed, was not threatened by its fire. Further, fires in the oilfield and the flaring of gas were not unusual sights and the other crews were not placed in significant danger ... Our conclusion is buttressed by the observation of the treating psychiatrist that he was baffled by Plaisance's overall reaction.

*Id.* at 1011. A dissent from the court's recognition that such a claim for relief had been adopted in theory brought turbulence to these waters and the case was reexamined *en banc.*

In the *en banc* decision, the Fifth Circuit reversed on the issue of whether one could recover for damages for purely emotional injuries, and held that the fact that the plaintiff's injury "was not a reasonably foreseeable consequence of the defendant's negligence" precluded recovery of any

damages, and thus it was not necessary, the majority said, to reach the issue of whether recovery for purely emotional damages is cognizable in the Jones Act/ FELA setting. *Plaisance*, 966 F.2d 166, 168–69. But the full court was unwilling to slam the hatch too tightly. The *en banc* court reiterated that *Gaston* "continues to represent the law of this circuit," and then went on to note, however, that "*Gaston* leaves open the question of whether a plaintiff may recover for purely emotional damages under a zone of danger theory." *Id.* at 169. Not long thereafter, *Ainsworth* repeated the Fifth Circuit's hesitant acceptance of the notion that not all claims for purely emotional harm were to be cast overboard, although most would likely not succeed on their facts.

In *Ainsworth v. Penrod Drilling Corp.*, 972 F.2d 546 (5 Cir.1992) the plaintiff was awaiting the arrival of a helicopter to take him and other crewmembers from a jackup rig to shore, when he witnessed the helicopter crash to the deck and explode. The plaintiff claimed he sustained damages for "fright, fear, and mental anguish" as a result of the accident and the crew's attempts to rescue any survivors. *Id.* at 547. One theory of recovery asserted by the plaintiff was that he was in the zone of danger and his "proximity to the crash caused him to fear for his and the crew's safety and that this fear produced the emotional injuries." *Id.* at 548. The classic zone of danger mantra. The court refused to commit to the zone of danger theory of recovery, but it did not disavow the *Plaisance* observation (*en banc*). The court merely noted that even if such a rule existed, under the facts of *Ainsworth* there could be no recovery. *Id.* The facts, not the theory, brought down the claim. The crash occurred approximately 100 feet from the control room in which the plaintiff was located and the plaintiff later testified that he knew that the helicopter would not crash into him. *Id.* The plaintiff admitted that he was not in fear of his life but instead that he "worried only that if he had gotten onto the helicopter the same thing could have happened to him." *Id.* In

short, the plaintiff simply failed to demonstrate that the helicopter crash either "threatened him with physical harm [or] caused him to fear that it would harm him." *d.* The plaintiff, in zone of danger terms, was not within the zone of danger of the events he encountered.

### C.

■ This brief review of the case literature in this circuit seems to point to an uneasy recognition by the Fifth Circuit that, under the right circumstances, one may recover for purely emotional harm under a zone of danger theory if the facts place the plaintiff within the definable zone. What is necessary for a valid claim is that the claimant must have been objectively within a zone of danger, he must have feared at the time of the incident that his life or person was in danger, and his emotional injuries must be a reasonably foreseeable consequence of the defendant's alleged negligence. The question for this Court is whether the facts of this particular case support the Court's doctrinal approval of this theory of recovery for purely emotional injuries. Can these facts accommodate the application of the zone of danger response?

### III.

### A.

■ In the context of this motion, the defendant does not dispute that Mr. Anselmi appears to have suffered severe emotional distress arising from the November 1989 explosion on the Penrod rig. The plaintiff has been seen by at least two psychiatrists, one of whom continues to treat the plaintiff, and both agree that the plaintiff suffers from post-traumatic stress disorder, a condition plausibly linked to the explosion on the Penrod rig. According to the plaintiff, his condition required hospitalization for three weeks in August 1990, and continues to require prescriptive medications to control nervousness and anxiety. The plaintiff maintains he was disabled from all work until August 1990 and has never been able to return to offshore work.

### B.

The existence of emotional injuries is merely the starting point. The court in *Gaston* and *Ainsworth* focused on the fact that the claimants in those cases offered no evidence that they were ever in fear for their lives during the incidents that gave rise to the suits. The plaintiff in this case, however, states that when the two explosions shook the rig, which to him sounded "like somebody dropped a bomb," he believed that the rig "was ready ... to hit the water," and he "thought we was gone." As the plaintiff went out the doorway to the living quarters, he saw flames approximately fifty to seventy-five feet from him coming from an exhaust vent for the pump room. By not rejecting zone of danger as a theory of recovery but nevertheless dismissing the claims, *Gaston* and *Ainsworth* suggest that the plaintiff must, objectively, be within a fact-particular zone of danger. *Plaisance* defined the parameters of this zone, stating the plaintiff must "also [be] threatened with physical harm as a result of the defendant's negligence." *Plaisance,* 937 F.2d 1004, 1009.

It is the plaintiff's contention that he was in the zone of danger because he felt the impact of the explosion and was within fifty to seventy-five feet of flames fueled by an open gas leak. One must also consider that a jackup rig is an isolated, self-supporting unit. The plaintiff could not easily flee the scene, and, in fact, it was several hours before he was able to leave the rig. Whether all this puts one within "the zone of danger" is a question of fact for the jury, but it is enough for purposes of this motion that the plaintiff has made an evidentiary showing that he felt threatened within an articulable area of actual threat to his well-being. Summary relief is not appropriate on these facts.

### C.

Finally, the plaintiff must also establish that his emotional injuries were a reasonably foreseeable consequence of the defendant's alleged negligence. One fairly reliable measure of foreseeability is the effect

the explosion had on other crewmembers. A toolpusher on the jackup rig at the time of the explosion, Louis Veillon, has testified that he too had to leave the rig after the explosion because he was emotionally affected by the explosion. Mr. Veillon has said that in his more that sixteen years of employment with Penrod, he had never been in involved in an incident of this magnitude. While this Court is well aware of the case lore that characterizes seamen as a hearty breed, one would imagine that a severe explosion on a rig in the middle of the Gulf at 3 a.m. would shake the fibre of even the heartiest of men. (We are also constantly reminded that seamen are wards of the Court).[3] Whether the plaintiff's frightened reaction to the incident is a reasonably foreseeable consequence of the defendant's negligence, however, is a question for the jury and cannot be dealt with summarily by invoking the machismo of seamen.

### D.

If one can read the accumulated tea leaves from the Fifth Circuit, it would seem the plaintiff has stated an actionable claim for damages for purely emotional injuries. This decision should be viewed as nothing daring or particularly flamboyant. It is faithful to the *Hagerty–Gaston–Plaisance* dialogue, and to Louisiana law. The zone of danger theory preserves traditional tort doctrines of negligence, legal causation, and foreseeable risks and, by doing so, it sustains the common law's ability to deal with frivolous claims. Of equal importance, it rejects the creation of arbitrary doctrinaire rules that bar plaintiffs from pursuing valid claims in an era that recognizes that emotional harm can be worse at times than physical harm.[4]

The defendant's motion for summary judgment is DENIED.

---

**3.** *See Gavagan v. United States,* 955 F.2d 1016, 1022 (5 Cir.1992).

**4.** The Court does not comment on the direct victim-bystander distinction announced in *Gaston* because plaintiff here was not a mere bystander, as he has described these events.