629 So.2d 437 (1993)
Ronald GIBBS, Plaintiff-Appellant,
v.
PETROLEUM HELICOPTERS, INC., Defendant-Appellee.
No. 93-274.
Court of Appeal of Louisiana, Third Circuit.
December 8, 1993.
Rehearing Denied January 5, 1994.
*438 Michael H. Schwartzberg, Lake Charles, for Ronald Gibbs.
Chester Theodore Alpaugh, III, Metairie, for Petroleum Helicopters, Inc.
Frederick Theodore Haas, III, New Orleans, for Insurance Co. of North America.
Before GUIDRY, KNOLL and SAUNDERS, JJ.
SAUNDERS, Judge.
This case involves a claim for damages for a mental or emotional injury without accompanying physical injury.
On May 22, 1989, plaintiff-appellant, Ronald Gibbs, while employed by Forest Oil Corporation, was a passenger in a helicopter owned by Petroleum Helicopters, Inc., defendant-appellee, when it lost power and nearly plunged into the Gulf of Mexico. Plaintiff alleges that, as a result of being tossed and shaken inside the helicopter, he suffered severe mental and emotional distress, including a fear of flying which, in effect, has disabled him from working in his job on offshore platforms.
After plaintiff's petition was filed in May of 1990, Gibbs' employer's insurer, Insurance Company of North America, intervened and prayed for judgment in its favor as to compensation and medical benefits which it had paid to plaintiff.
In October of 1992, Petroleum Helicopters, Inc. (PHI) moved for summary judgment contending that, as a matter of general maritime law, recovery is not permitted for purely emotional injuries unaccompanied by any physical trauma or impact. The hearing on the motion for summary judgment was heard on November 2, 1992. The trial court granted summary judgment in favor of PHI. Gibbs now appeals.
The sole issue before this court is whether the trial court was correct in finding that Gibbs may not, as a matter of law, recover for purely emotional injury absent physical injury, even when plaintiff is a direct participant in the event.
In support of its motion for summary judgment, PHI introduced excerpts from Gibbs deposition into evidence. Additionally, the plaintiff's petition was introduced together with copies of both Ainsworth v. Penrod Drilling Corp., 972 F.2d 546 (5th Cir.1992) and Briscoe v. Devall Towing & Boat Service of Hackberry, Inc., 799 F.Supp. 39 (W.D.La. 1992), aff'd., 992 F.2d 323 (5th Cir.), cert. denied, ___ U.S. ___, 114 S.Ct. 184, 126 L.Ed.2d 143 (1993).
Plaintiff, in opposition to PHI's motion for summary judgment, filed excerpts of his deposition and the deposition of Dennis DeVille, the other passenger in the helicopter at the time of the incident. Additionally, plaintiff submitted excerpts from the deposition of Dr. Harper Willis, his treating physician, who testified regarding Gibbs' Post-Traumatic Stress Disorder and resulting phobia of flying in helicopters.
At the time of the hearing on defendant's motion for summary judgment, the United States Fifth Circuit Court of Appeals had not recognized recovery for purely emotional injuries under a "zone of danger" rule, although the question remained open. See Gaston v. Flowers Transportation, 866 F.2d 816 (5th Cir.1989); Plaisance v. Texaco, Inc., 966 F.2d 166 (5th Cir.1992) (en banc); Ainsworth v. Penrod Drilling Corp., supra. In these cases, the plaintiffs were bystanders, none of whom were ever in danger.
The trial court relied upon Briscoe v. Devall Towing & Boat Service of Hackberry, Inc., supra, in granting PHI's motion for summary judgment. In Briscoe, the vessel on which the plaintiff was employed as a *439 deck hand sank in the Calcasieu Parish ship channel. As the craft went down, the plaintiff climbed into the water and swam, at most, 100 feet to a nearby vessel.
Briscoe was diagnosed as having Post-Traumatic Stress Disorder caused by "extreme anxiety attacks and nightmares regarding the sinking and his near death." Briscoe, supra, 799 F.Supp. at 41. The defendant, Devall Towing & Boat Service of Hackberry, Inc., moved for summary judgment. The Briscoe court, in granting defendant's motion for summary judgment, reviewed Gaston, supra, Plaisance, supra and Ainsworth, supra, as follows:
"The only issue before this court is whether a plaintiff may recover under the Jones Act, 46 U.S.C.App. § 688, for purely emotional injuries absent physical injury. The law in the Fifth Circuit is clear that such injuries are not compensable.
"In Gaston v. Flowers Transp., 866 F.2d 816 (5th Cir.1989), the plaintiff, after suffering trivial physical injurya bruised elbow, was diagnosed as having post traumatic stress disorder. Judge Gee, as the organ of the court, refused to allow the plaintiff to recover under the Jones Act for a purely emotional injury. In analyzing the plaintiff's claim, the court noted that, "[w]hether even a liberal interpretation of the Jones Act requires extending recovery to those who suffer purely emotional injury is doubtful." 866 F.2d at 817.
"In Plaisance v. Texaco, Inc., 966 F.2d 166 (5th Cir.1991), the Fifth Circuit, en banc, refused to allow a tug boat captain and his spouse to recover for emotional injury allegedly caused by witnessing a fire in an action against their employer and tug charter to recover under the Jones Act and general maritime law. Judge Davis, writing for the court, instructed that Gaston represents the law of this circuit as far as recovery for purely emotional injuries under the Jones Act is concerned. Judge Davis noted that Gaston only allows a plaintiff to recover for purely emotional injuries if he also suffered physical injury. 966 F.2d at 169.
"Most recently, in Ainsworth v. Penrod Drilling Corp., 972 F.2d 546 (5th Cir.1992), the Fifth Circuit set forth that a plaintiff may only recover for an emotional injury that results from the physical contact. Further, the court noted that the rule in the Fifth Circuit is that trivial physical injuries do not support recovery for emotional injuries. Finally, the court refused to allow recovery under the zone of danger rule. The zone of danger rule provides a mechanism for recovery of emotional injuries absent any physical contact, which result from the witnessing of peril or harm to another if the plaintiff is also threatened with physical harm as a consequence of the defendant's negligence. 966 F.2d at 168. The court specifically noted that the Fifth Circuit does not allow a plaintiff to recover because he was in the zone of danger during the accident.
"As these decisions show, a plaintiff may not recover for purely emotional injury under the Jones Act. That this plaintiff has suffered some trivial physical injury is not sufficient reason to allow the plaintiff to recover for an emotional injury. Even accepting the facts in the light most favorable to this plaintiff, he may not recover for his emotional injuries; for, at most, his injuries are trivial.
"These cases also indicate that a plaintiff may not recover for emotional injury that does not arise out of a physical injury. Thus, in Gaston, the court refused to allow the plaintiff to recover for the emotional injury resulting from watching the death of another. The mere fact that the plaintiff in Gaston had, in fact, suffered an injury albeit a trivial injurywas not sufficient to justify allowing him to recover for emotional injuries caused by watching the death of another. This plaintiff does not allege that his emotional injury arose out of his physical injuries; rather, he alleges that they arose out of his "extreme anxiety and nightmares regarding this sinking and his near death." [Plaintiff's Pretrial Statement at page 2]."
Briscoe, supra, 799 F.Supp. at 40-41.
The Briscoe court continued with a discussion of Hagerty v. L & L Marine Services, Inc., 788 F.2d 315 (5th Cir.1986), as follows:

*440 "Nor is the impact requirement applicable under these facts. In Hagerty v. L & L Marine Services, Inc., 788 F.2d 315 (5th Cir.1986), the court found the plaintiff had suffered a physical injury when he was drenched on two occasions by toxic carcinogenic chemicals. In a footnote, the court noted that a drenching with toxic carcinogenic chemicals is sufficient to satisfy the impact requirement. Hagerty, at 318 n. 1. This statement by the court was necessarily dictum; for the plaintiff had, in fact, suffered a physical injury."
Briscoe, supra, 799 F.Supp. at 41.
The Briscoe court summarized the jurisprudence as follows at page 42:
"It is evident from this review of the cases citing Hagerty that the Fifth Circuit does not intend for Hagerty to apply to allow a plaintiff to recover for purely emotional injury merely because of some picayune impact. Rather, the rule of the Fifth Circuit, and the rule that this court now applies, is that a plaintiff suing for purely emotional injuries can recover only if he also suffered physical injuries."
Subsequent to the Briscoe decision from the United States District Court for the Western District of Louisiana, the United States District Court for the Eastern District of Louisiana rendered Anselmi v. Penrod Drilling Corp., 813 F.Supp. 436 (E.D.La. 1993).
In Anselmi, the plaintiff was a crane operator on a jack-up rig who had gone to bed in the living quarters when he was awakened by a loud whistle. Shortly thereafter, the rig was rocked by two explosions, demolishing part of the rig and injuring many men. Anselmi went to the doorway and saw flames 50 to 70 feet from him. He made his exit after assisting other crew members. Although the plaintiff did not experience any physical injuries, he was unable to continue working and was later diagnosed with Post-Traumatic Stress Disorder. Penrod Drilling Corporation, the defendant, then moved for summary judgment.
The Anselmi court, in a more detailed analysis than the Briscoe court, went on to analyze the Hagerty, supra, Gaston, supra, Plaisance, supra, and Ainsworth, supra, jurisprudence as follows:
"The Fifth Circuit first spoke to the issue in Hagerty v. L & L Marine Services, 788 F.2d 315 (5 Cir.1986), in which the court reversed a district court's ruling that there could be no recovery for fear of developing cancer under the Jones Act. The Jones Act, the court wrote, is `intended to provide broad coverage for all work-related `injuries,' whether characterized as mental or physical.' Id. at 318. The court maintained that the `circumstances surrounding the fear-inducing occurrence may themselves supply sufficient indicia of genuineness. It is for the jury to decide questions such as the existence, severity and reasonableness of the fear.' Id. The facts in Hagerty, however, were not truly suited for resolving this issue because the plaintiff arguably experienced subtle physical impact: he was doused twice with carcinogenic chemicals and suffered an initial burning sensation as well as other physical symptoms.
"Although the arguable physical impact encountered in Hagerty did not receive much initial attention, the fact that the plaintiff in Hagerty experienced some kind of physical impact was later used, among other distinctions, to sharply narrow the scope of that decision when the Fifth Circuit was confronted for the first time with a purer claim for damages for emotional harm in Gaston v. Flowers Transportation, 866 F.2d 816, 819 (5 Cir.1989). In Gaston, the plaintiff tried to recover for the emotional distress caused when he witnessed his half-brother get crushed to death during a collision between a barge and a tug boat. The court refused to extend Jones Act liability to include Gaston's `bystander liability,' which the court defined as `an attempt to recover damages for witnessing the death or injury of another crew member, without significant injury or fear of injury to himself.' Id. at 817. Particular significance, then, was given to the fact that `no evidence was presented tending to show that Gaston was ever concerned for his own safety.' Id. at 819. The court in Gaston saw the creation of liability to one who could not claim the *441 status of a direct victim as requiring significant and unwelcomed innovations: permitting a recovery for purely emotional injuries... and permitting such a recovery, not for such injuries resulting from physical trauma to the Plaintiff, or even from his fear of such trauma to himself, but for the emotional injuries stemming from witnessing a bad sight. Id. The Gaston plaintiff had urged that recovery should be permitted under a zone of danger theory, even for bystanders. Even though the Gaston court recognized that Louisiana law does allow recovery for those within a zone of danger in relation to the injuring events, the court maintained that the plaintiff had `made no showing that he even thought himself to be in danger.'
* * * * * *
"Id. at 820. Gaston reluctantly preserved `zone of danger' as a possible theory of recovery for purely emotional harm, but held it had no application to the facts there. Mr. Gaston was not a direct victim, and he never thought he was in physical danger.
"Where Hagerty seemingly moved this circuit somewhat closer to recovery for purely emotional harm, Gaston paused and backed off but refused outright repudiation of all theories of recovery. Two recent cases again placed the issue forthrightly before Fifth Circuit. See Ainsworth v. Penrod Drilling Corp., 972 F.2d 546 (5 Cir.1992); Plaisance v. Texaco, Inc., 966 F.2d 166 (5 Cir.1992)
B.
"The history of the Plaisance case is particularly useful in helping us determine where we seem to be today in this journey. That case involved a tug boat captain who was towing a barge that struck an underwater gas pipeline. The pipeline ruptured and an explosion followed. The resulting fire caused damage to the barge and to the two in the rear of the flotilla, but not to the one controlled by Mr. Plaisance. The fire was extinguished within thirty minutes without physical injury to any of the men involved. As a result of these events, the plaintiff was diagnosed with and hospitalized for post-traumatic stress disorder, arising from his fear that he or someone else could have been killed in the explosion or fire. The original three judge appellate panel, in a split decision, held that `a claim for an emotional injury caused by emotional distress negligently inflicted, even without an accompanying physical injury or physical contact, is cognizable under the FELA.' Plaisance v. Texaco, Inc., 937 F.2d 1004, 1009 (5 Cir.1991). This decision was based in part on the recognition that `an emotional injury can be every bit as harmful, debilitating and destructive of the quality of one's life as a physical injury.' Id. The decision embraced a solution through the utility of a cause and effect model, but denied recovery because the injury complained of [was] not a reasonably foreseeable consequence of the alleged negligence.
* * * * * *
A dissent from the court's recognition that such a claim for relief had been adopted in theory brought turbulence to these waters and the case was reexamined en banc.
"In the en banc decision, the Fifth Circuit reversed on the issue of whether one could recover for damages for purely emotional injuries, and held that the fact that the plaintiff's injury "was not a reasonably foreseeable consequence of the defendant's negligence" precluded recovery of any damages, and thus it was not necessary, the majority said, to reach the issue of whether recovery for purely emotional damages is cognizable in the Jones Act/ FELA setting. Plaisance, 966 F.2d 166, 168-69. But the full court was unwilling to slam the hatch too tightly. The en banc court reiterated that Gaston `continues to represent the law of this circuit,' and then went on to note, however, that `Gaston leaves open the question of whether a plaintiff may recover for purely emotional damages under a zone of danger theory.' Id. at 169. Not long thereafter, Ainsworth repeated the Fifth Circuit's hesitant acceptance of the notion that not all claims for purely emotional harm were to be cast *442 overboard, although most would likely not succeed on their facts.
"In Ainsworth v. Penrod Drilling Corp., 972 F.2d 546 (5 Cir.1992) the plaintiff was awaiting the arrival of a helicopter to take him and other crewmembers from a jackup rig to shore, when he witnessed the helicopter crash to the deck and explode. The plaintiff claimed he sustained damages for `fright, fear, and mental anguish' as a result of the accident and the crew's attempts to rescue any survivors. Id. at 547. One theory of recovery asserted by the plaintiff was that he was in the zone of danger and his `proximity to the crash caused him to fear for his and the crew's safety and that this fear produced the emotional injuries.' Id. at 548. The classic zone of danger mantra. The court refused to commit to the zone of danger theory of recovery, but it did not disavow the Plaisance observation (en banc). The court merely noted that even if such a rule existed, under the facts of Ainsworth there could be no recovery. Id. The facts, not the theory, brought down the claim. The crash occurred approximately 100 feet from the control room in which the plaintiff was located and the plaintiff later testified that he knew that the helicopter would not crash into him. Id. The plaintiff admitted that he was not in fear of his life but instead that he `worried only that if he had gotten onto the helicopter the same thing could have happened to him.' Id. In short, the plaintiff simply failed to demonstrate that the helicopter crash either `threatened him with physical harm [or] caused him to fear that it would harm him.' Id. The plaintiff, in zone of danger terms, was not within the zone of danger of the events he encountered.
C.
"This brief review of the case literature in this circuit seems to point to an uneasy recognition by the Fifth Circuit that, under the right circumstances, one may recover for purely emotional harm under a zone of danger theory if the facts place the plaintiff within the definable zone. What is necessary for a valid claim is that the claimant must have been objectively within a zone of danger, he must have feared at the time of the incident that his life or person was in danger, and his emotional injuries must be a reasonably foreseeable consequence of the defendant's alleged negligence. The question for this Court is whether the facts of this particular case support the Court's doctrinal approval of this theory of recovery for purely emotional injuries. Can these facts accommodate the application of the zone of danger response?"
(Emphasis added.)
Anselmi, supra, 813 F.Supp. at 439-42.
In Anselmi, the court determined that it was undisputed that Anselmi suffered severe emotional distress arising from the explosion on the Penrod rig. Under the facts presented by Anselmi, the court determined that whether or not Anselmi was "threatened with physical harm as a result of defendant's negligence" and thus, within "the zone of danger" was a question of fact for the jury. Plaisance, 937 F.2d 1004, 1009 (5th Cir.1991), Anselmi, supra, 813 F.Supp. at 443. On this basis, the Anselmi court found that summary relief was not appropriate.
Additionally, the Anselmi court found that an additional question remained for the jury, i.e., whether plaintiff's emotional injuries were a reasonably foreseeable consequence of the defendant's alleged negligence.
Finally, the Anselmi court concluded at page 443, in stating:
"If one can read the accumulated tea leaves from the Fifth Circuit, it would seem the plaintiff has stated an actionable claim for damages for purely emotional injuries. This decision should be viewed as nothing daring or particularly flamboyant. It is faithful to the Hagerty-Gaston-Plaisance dialogue, and to Louisiana law. The zone of danger theory preserves traditional tort doctrines of negligence, legal causation, and foreseeable risks and, by doing so, it sustains the common law's ability to deal with frivolous claims. Of equal importance, it rejects the creation of arbitrary doctrinaire rules that bar plaintiffs from pursuing valid claims in an era *443 that recognizes that emotional harm can be worse at times than physical harm."
The Briscoe court did not consider whether the plaintiff in that case was threatened with physical harm as a result of the defendant's negligence or in the "zone of danger." Additionally, the Briscoe court did not find that the issue of whether the plaintiff's emotional injuries were a reasonably foreseeable consequence of the defendant's alleged negligence was a question of fact for the jury to decide. In Briscoe, there is no discussion as to whether or not Briscoe had been in actual danger; the court merely determined that Briscoe was not physically injured and thus, granted judgment summarily on that basis.
In light of Anselmi, supra, it appears that once a claimant has shown that he was objectively within a "zone of danger," and that he feared at the time of the incident, that his life or person was in danger, the next hurdle to be met in determining whether an award will be made for mere emotional injuries pursuant to Plaisance, supra, is whether or not his emotional injuries are a reasonably foreseeable consequence of the defendant's alleged negligence. Plaisance, 966 F.2d at 168-69, seems to say that once a plaintiff has shown that his injuries are a reasonably foreseeable consequence of the defendant's negligence, then the court will determine whether recovery is available for emotional injuries.
We find the Anselmi court's analysis to be compelling and as such, reverse the grant of summary judgment in favor of defendant-appellee, Petroleum Helicopters, Inc., in the case at bar.
Finally, in July of this year, the U.S. Fifth Circuit in Gough v. National Gas Pipeline Co. of America, 996 F.2d 763 (5th Cir.1993), allowed recovery for purely emotional injuries, to a boat captain that abandoned his ship after it struck a submerged pipeline and an explosion engulfed the ship. The court specifically acknowledged that the defendant's contended that maritime law did not permit recovery for purely emotional damage. The Gough court stated the jurisprudence as follows in finding that Gough had met the "impact test" at page 765-66:
"Beyond question, purely emotional injuries will be compensated when maritime plaintiffs satisfy the `physical injury or impact rule.' Plaisance v. Texaco, Inc., 966 F.2d 166, 168-169 (5th Cir.1992) (en banc). Either a physical injury or physical impact has traditionally been required. See Hagerty v. L & L Marine Services, Inc., 788 F.2d 315, 318 (5th Cir.1986)....
"The impact or injury rule is an arbitrarily stated rule with important functions. One purpose is `to provide courts with an objective means of ensuring that the alleged mental injury is not feigned.' Hagerty, 788 F.2d at 318. A more important purpose of the rule is to provide a principled basis for limiting liability....
"The bright line impact or injury rule performs a similar function."
Gough, supra, 996 F.2d at 765-66.
The Gough court continued by distinguishing Gaston, supra, from the facts before it insofar as the Gaston plaintiff, unlike Gough, did not establish that he considered himself to be in danger and did not establish that he had suffered a physical impact or significant physical injury. The Gough court noted that the Gaston plaintiff's only claim was for emotional distress caused by witnessing his brother's death. Therefore, the plaintiff in Gaston, a mere bystander, could not recover for his emotional distress. The Gough court also noticed that the Gaston court left open the question of whether a plaintiff could recover under a "zone of danger" theory. Gough, supra, 996 F.2d at 766.
The Gough court found that Captain Gough's injuries and the nature of his experience met the impact test. Gough was located in the pilot house when the steamer collided with the pipeline. Within seconds, flames spread toward Gough and he could feel the heat. Immediately after he left the pilot house, fire engulfed it. To avoid the flames, he was forced to jump overboard into the Gulf of Mexico. The heat was unbearable and Gough inhaled fumes from the fire, in addition to ingesting salt water while in the water. Another victim of the disaster pulled him underwater and he suffered multiple contusions. Additionally, although unconfirmed by medical record, the evidence suggested that Gough suffered from minor *444 burns. The Gough court likened these facts to the Hagerty, supra, case and found proof of impact and of physical injury even more convincing under the facts before it.
Gough additionally argued that if the impact rule was not satisfied, he could recover for emotional distress because he was within the "zone of danger." The Gough court, without making reference to either Briscoe, supra, or Anselmi, supra, stated that "[w]e have repeatedly declined to adopt or preclude the zone of danger theory.... Since Captain Gough may recover on another basis, we once more leave this question open." Gough, supra, 996 F.2d at 766-67; see also Jackson v. Kansas City Southern Ry., 619 So.2d 851, 857-860 (La.App. 3d Cir.1993) (identical issue addressed under a FELA claim).

CONCLUSION
In light of the recent decision of the United States District Court for the Eastern District of Louisiana in Anselmi v. Penrod Drilling Corp., 813 F.Supp. 436 (E.D.La. 1993), we find that the trial court's grant of summary judgment must be reversed as it was based upon an assessment of Fifth Circuit law on this issue which has subsequently been modified.
Under the facts presented, it is undisputed that Gibbs was within the "zone of danger." We find that a genuine issue of material fact remains as to whether Mr. Gibbs' injury was a reasonably foreseeable consequence of the alleged negligence of the defendant.
Based upon the foregoing, we reverse the summary judgment granted in favor of defendant-appellee, Petroleum Helicopters, Inc., and remand this action to the district court for proceedings consistent with this opinion.
Costs of this appeal to be paid by defendant, Petroleum Helicopters, Inc. The assessment of costs at the trial level is to wait a final disposition of this matter.
REVERSED AND REMANDED.
GUIDRY, J., concurs and assigns written reasons.
GUIDRY, Judge, concurring.
The record on summary judgment makes clear that plaintiff suffered no physical injury in the mishap which he alleges caused him severe mental or emotional injury. Under these circumstances, plaintiff is entitled to recovery of damages only if it be concluded that the "zone of danger" theory is a viable exception, under maritime law, to the general principle that in Jones Act cases there can be no recovery for purely emotional injuries absent accompanying physical injuries.
The Briscoe court appeared to decide this issue with, among others, the following categorical statement: "... [t]he rule of the Fifth Circuit, and the rule that this court now applies, is that a plaintiff suing for purely emotional injuries can recover only if he also suffered physical injuries". Briscoe was affirmed by the U.S. Fifth Circuit in a per curiam opinion and certiorari was denied by the U.S. Supreme Court.
In spite of the rather positive language to the contrary in Briscoe, I agree with the opinion author that later jurisprudence out of the Fifth Circuit appears to reflect that the "zone of danger" theory has yet to be adopted or precluded by that court. See Gough v. National Gas Pipeline Co. of America, 996 F.2d 763 (U.S. 5th Cir.1993). Considering that the federal law on this subject appears to be in a state of flux and considering the seriousness of this issue, which, in my view, should not be decided on summary judgment, I agree that the trial court's judgment should be reversed and this matter remanded for a full hearing on its merits.
For these reasons, I respectfully concur.