# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 6, 2024

Lyle W. Cayce
Clerk

_____

No. 23-30859

_____

John Wunstell, Jr.,

*Plaintiff—Appellant*,

*versus*

BP, P.L.C.; BP America Production Company; BP
Exploration & Production, Incorporated,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC Nos. 2:10-CV-2543, 2:10-MD-2179

_____

Before Jones, Willett, and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

This case is one of many arising from the *Deepwater Horizon* litigation. John Wunstell, Jr. sued BP for mental and physical injuries allegedly caused by his work on the oil spill cleanup effort. The district court excluded his causation expert's opinions and granted summary judgment for BP. We AFFIRM.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-30859

## I

Wunstell joined the *Deepwater Horizon* cleanup effort as a captain in BP's Vessel of Opportunity program. He was part of a burn team that conducted controlled burns of oil collected in the Gulf of Mexico. While the oil burned, the team stayed connected to the boom[1] used to collect the oil, remaining about 100 yards away. His team conducted one to five burns per day, each lasting from 45 minutes to 6.5 hours. They were surrounded by other teams also burning oil.

During his time on the burn team, Wunstell alleges that he was exposed to "crude oil, crude oil vapors, dispersants . . . , fumes from the burning of all these materials, . . . [and] falling liquid [from] planes that sprayed dispersants [as they] passed overhead." While on the water, Wunstell "became severely ill with a severe headache, nausea, and shortness of breath," as well as "a severe rise in blood pressure," "chest pain[,] and irritation in his nose." His symptoms "progressively worsened" and he was eventually taken by helicopter to a local hospital.

Wunstell alleges that as a result of his work on the burn team, he suffered from "acute bronchitis and irritant rhinitis as well as post-traumatic stress-disorder . . . , major depressive disorder, somatic symptom disorder, and general mental anguish." He sued BP for damages arising from these injuries.

During discovery, Wunstell offered two expert reports from Dr. Judd Shellito, his only causation expert. BP moved to exclude Dr. Shellito's report on the ground that it did not meet this court's requirements to prove causation. It also moved for summary judgment, arguing that (1) because Dr.

---

[1] A boom is a temporary floating barrier used to contain an oil spill.

2

Shellito's opinions were unreliable, Wunstell could not prove causation, an essential element of his claim; and (2) Wunstell's allegations did not establish liability for mental injury damages under maritime law. The district court agreed and granted both motions.

Wunstell then moved under Rule 59(e) to alter or amend the judgment. The district court denied the motion, concluding that Wunstell did not show that it had committed a manifest error of law or fact.

Wunstell timely appealed.

## II

"[W]e review the admission or exclusion of expert testimony for an abuse of discretion, and we afford the trial court wide latitude in its determination." *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 615 (5th Cir. 2018) (alteration adopted) (internal quotation marks and citation omitted). "We will not find error unless the ruling is *manifestly erroneous*," meaning that the error "is plain and indisputable," amounting "to a complete disregard of the controlling law." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 235 (5th Cir. 2004).

We review summary judgment de novo, applying the same standards as the district court. *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is appropriate if the movant shows that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

We review denials of Rule 59(e) motions for abuse of discretion. *Antero Res., Corp. v. C&R Downhole Drilling Inc.*, 85 F.4th 741, 748 (5th Cir. 2023). Rule 59(e) motions "are for the narrow purpose of correcting manifest errors of law or fact or presenting newly discovered evidence—not for raising arguments which could, and should, have been made before the judgment

issued." *Rollins v. Home Depot USA*, 8 F.4th 393, 396 (5th Cir. 2021) (internal quotation marks and citation omitted).

### III

Wunstell contends that the district court erred by excluding Dr. Shellito's opinions and granting summary judgment for BP. We start with Wunstell's arguments relating to his physical injury claims before turning to his mental injury claims.

### A

The district court properly excluded Dr. Shellito's causation opinions and accordingly, properly granted summary judgment on Wunstell's physical injury claims. As explained below, (1) Dr. Shellito's opinion failed to meet our requirements for establishing general causation, and (2) Wunstell's counterarguments are unavailing.

### 1

In toxic-exposure cases like this one, a plaintiff "must prove both general and specific causation." *Braggs v. BP Expl. & Prod., Inc.*, No. 23-30297, 2024 WL 863356, at *2 (5th Cir. Feb. 29, 2024) (per curiam) (citing *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007)). To prove general causation, the plaintiff must prove that "a substance is capable of causing a particular injury or condition in the general population." *Knight*, 482 F.3d at 351 (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997)). To prove specific causation, the plaintiff must prove that "a substance caused a particular individual's injury." *Id.* (quoting *Merrell Dow Pharm.*, 953 S.W.2d at 714)). Evidence of specific causation "is admissible only as a follow-up to admissible general-causation evidence." *Id.*

We have "frequently addressed what general causation experts . . . must show when a plaintiff alleges injury from toxic exposure."

*Braggs*, 2024 WL 863356, at *2. The expert must show "that the chemical at issue is actually capable of harming individuals in the general population." *Id.* (quoting *Johnson v. Arkema, Inc.*, 685 F.3d 452, 469 (5th Cir. 2012)). To make this showing, the expert must "determine not only whether a chemical can cause certain health effects, but also at what level of exposure those health effects appear." *Id.*; *Barrington v. BP Expl. & Prod., Inc.*, No. 23-30343, 2024 WL 400191, at *1 (5th Cir. Feb. 2, 2024) (per curiam) ("B3 plaintiffs 'must show scientific knowledge of the harmful level of exposure to a chemical to satisfy general causation.'" (alteration adopted) (internal quotation marks omitted) (quoting *Prest v. BP Expl. & Prod., Inc.*, No. 22-30779, 2023 WL 6518116, at *2 (5th Cir. Oct. 5, 2023) (per curiam)); *see also Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996)). We have described this as a "minimal fact[] necessary to sustain the plaintiffs' burden in a toxic tort case." *Braggs*, 2024 WL 863356, at *2 (quoting *Allen*, 102 F.3d at 199).

Dr. Shellito's opinions failed to meet this standard because he failed to identify the level of exposure to any of the substances alleged by Wunstell at which irritant rhinitis and bronchitis appear in the general population. Accordingly, the district court did not abuse its discretion in excluding this evidence.

2

Wunstell makes two counterarguments. Neither is persuasive.

First, Wunstell argues that contrary to the district court's opinion, Dr. Shellito "specifically state[d] which chemicals caused his injuries" at his deposition. He points to Dr. Shellito's reliance on "the composite chemicals of these substances through [BP's material safety data sheets (MSDS)]." But we have previously rejected an expert's reliance on an MSDS alone. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 278 (5th Cir. 1998) ("Dr. Jenkins

had no information on the level of exposure necessary for a person to sustain the injuries about which the MSDS warned. The MSDS made it clear that the effects of exposure to Toluene depended on the concentration and length of exposure.").

Dr. Shellito admitted that he did not include in his report the dose of the chemicals he identified from the MSDS that could cause rhinitis or bronchitis. That omission is fatal. *See Braggs*, 2024 WL 863356, at *2 ("Cook's failure to identify the level of exposure capable of causing the alleged injuries renders his opinion unreliable."); *Barrington*, 2024 WL 400191, at *2 ("Dr. Cook's report includes no identification of the necessary dose of exposure to crude oil or dispersant for any of Barrington's complained-of symptoms to manifest in the general population.").

Second, Wunstell contends that the district court erred by requiring expert testimony for general causation *at all* because BP's corporate representative, Dr. David Dutton, testified at his deposition "that the chemicals at issue could generally cause Wunstell's irritant rhinitis and bronchitis." BP disagrees with this characterization of Dr. Dutton's testimony. In any event, Wunstell raised this argument for the first time in his Rule 59(e) motion. He did not make this argument in his response to BP's motion for summary judgment, or in his response to BP's motion to exclude Dr. Shellito's opinions. His response to BP's motion to exclude merely mentioned that Dr. Dutton agreed that "the hazard information and other information on the MSDS sheet" was "accurate and reliable." Although Wunstell mentioned that "Dr. Dutton testified that he understood that, as the corporate representative, he was binding BP to his testimony," Wunstell never argued that this testimony relieved him of his burden to present evidence of general causation. *See FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994) ("[I]f a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the

proceedings before the district court. If an argument is not raised to such a degree that the district court has an opportunity to rule on it, we will not address it on appeal.").

Rule 59(e) "motions cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (citation omitted). Nor can they be used "to argue a case under a new legal theory." *Id.* (citation omitted).

In sum, the district court did not abuse its discretion by excluding Dr. Shellito's general-causation opinion. Because Dr. Shellito was Wunstell's only general-causation expert, we need not address specific causation. *See Knight*, 482 F.3d at 351 ("Evidence concerning specific causation in toxic tort cases is admissible only as a follow-up to admissible general-causation evidence."). Without expert testimony on causation, Wunstell lacks an essential element of his claim. Accordingly, the district court properly granted summary judgment on Wunstell's claim for damages from his physical injuries.

B

We next turn to Wunstell's claim for mental injury damages. The district court granted summary judgment on this claim because (1) Wunstell could not prove a predicate physical injury under general maritime law; and (2) even if his claim was cognizable under a zone-of-danger theory, Wunstell did not "present[] sufficient facts to sustain such a claim." We agree.

1

"Under general maritime law, a plaintiff may 'recover[ ] for emotional injury provided there is some physical contact.'" *In re Deepwater Horizon*, 841 F. App'x 675, 678 (5th Cir. 2021) (quoting *Plaisance v. Texaco, Inc.*, 966 F.2d 166, 168 (5th Cir. 1992) (en banc)). Because the physical contact must

be more than "trivial," *id.* (quoting *Ainsworth v. Penrod Drilling Corp.*, 972 F.2d 546, 547 (5th Cir. 1992) (per curiam), "'transitory, non-recurring physical phenomena, harmless in themselves, such as dizziness, vomiting, and the like,' are insufficient to establish physical impact." *Id.* (quoting Restatement (Second) Torts § 436A cmt. c (Am. L. Inst. 1965)). "[T]here must [also] be a causal relationship between the impact and the injury: the emotional injury must 'result[] from' the physical contact." *Id.* (quoting *Ainsworth*, 972 F.2d at 547). The Supreme Court has held that "the words 'physical impact' do not encompass every form of 'physical contact.'" *Metro-N. Commuter R. Co. v. Buckley*, 521 U.S. 424, 432 (1997).

For the same reasons as stated above, Wunstell cannot prove his emotional injuries were caused by his work on the cleanup. He did not provide admissible expert causation evidence linking his contact with smoke and chemicals to his current emotional injuries. And though Wunstell admits his only physical injuries—irritant rhinitis, acute bronchitis, and headaches—were "acute" and "'transient or temporary,'" we need not determine whether he failed to show that his injuries are "significant enough to meet the physical-injury test."

2

We next consider Wunstell's zone-of-danger theory. "We have 'repeatedly declined to adopt or preclude the zone-of-danger theory' for general maritime law." *SCF Waxler Marine, L.L.C. v. Aris T M/V*, 24 F.4th 458, 476 (5th Cir. 2022) (citation omitted). But even assuming Wunstell could recover under this theory, his claim fails.

Where these claims have been allowed, the plaintiff must "plausibly allege that he was at 'immediate risk of physical harm.'" *In re Deepwater Horizon*, 841 F. App'x at 678 (quoting *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 224 (5th Cir. 2013)). "[T]he plaintiff must 'objectively [be] within

a zone of danger' and subjectively 'fear[ ] at the time of the incident that his life or person was in danger.'" *Id.* (quoting *Anselmi v. Penrod Drilling Corp.*, 813 F. Supp. 436, 442 (E.D. La. 1993), and citing *Ainsworth*, 972 F.2d at 547–48).

The district court concluded that even if we were to recognize this theory, Wunstell's claim would fail because we rejected a more compelling zone-of-danger argument in *In re Deepwater Horizon*. We agree. There, the plaintiffs were fishing on the day of the *Deepwater Horizon* explosion. They alleged that they were 100 to 200 feet from the rig and were "under constant threat of another massive explosion that would send debris towards them and their boat when they were attempting to rescue people in the water" and that there "were subsequent explosions every few minutes on the burning rig." *In re Deepwater Horizon*, 841 F. App'x at 677. They also alleged that they felt "overwhelming heat" from the burning rig, "suffered burns on their faces and had their hair singed," and "[t]heir boat's powder coating melted in places. Lastly, they felt and heard deep rumbling sounds coming from deep below the surface of the water." *Id.* at 679 (internal quotation marks omitted). We concluded that under these facts, "Plaintiffs were objectively not within the zone of danger." *Id.* at 679. So too here.

Wunstell argues that he was "in constant danger" while working on the burn team and that he couldn't leave the scene because he was tethered to a boom during the burns. But under these facts, we can't say that he was in a sufficiently "*immediate* risk of physical harm" to be in the zone of danger. *SCF Waxler Marine*, 24 F.4th at 476 (emphasis added). Nor is Wunstell's case like *Anselmi*, on which he relies. There a plaintiff alleged that he was on a rig that was "rocked by two explosions" and that he could not leave the rig for "several hours" after the incident. 813 F. Supp. at 438, 442. Here, in contrast, Wunstell doesn't allege that he was in immediate danger of an explosion or similar danger, and he remained 100 yards away from the burns.

No. 23-30859

Additionally, Wunstell voluntarily participated in a controlled burn *weeks after* the initial explosion. *See In re Deepwater Horizon*, 841 F. App'x at 679–80 (emphasizing that Plaintiffs were able to move their boat and voluntarily leave the scene, and that "deep rumblings" did not present an immediate risk of harm).

Wunstell posits that the district court's "central legal and factual error is that it fails to assign any merit to the inherent dangerousness of Wunstell's work," but he cites no authority suggesting that the "inherent dangerousness" of work can satisfy the zone-of-danger test. That is not to say that the burn team was not at risk of any danger. But that is not what the test requires.

IV

Because Wunstell failed to provide admissible evidence of general causation for his physical injury claims and could not prove any predicate physical injury or facts to show a zone of danger for his mental injury claims, we conclude that the district court did not abuse its discretion in denying Wunstell's Rule 59(e) motion. His motion simply rehashed the arguments made in his response to BP's motion for summary judgment. Accordingly, Wunstell has not shown that the district court committed a manifest error of law or fact. *See Rollins*, 8 F.4th at 396.

AFFIRMED.